FLOYD THOMPSON v. THE STATE.

No. 3718.   Decided October 20, 1915.

**1.—Murder—Change of Venue—Contest—Affidavit—Practice.**

Where, upon trial of murder, defendant made a motion for a change of venue which the State contested, but the latter was not sworn to, whereupon the court gave the State time to do this, there was no error. Following Baw v. State, 33 Texas Crim. Rep., 24.

**2.—Same—Change of Venue—Discretion of Court.**

Where, upon motion of change of venue, the court heard testimony pro and con, and decided against defendant's motion, the preponderance of the evidence being against such motion, there was no error.

**3.—Same—Jury and Jury Law.**

Where, upon trial of murder, several veniremen failed to appear and answer when their names were called, whereupon the court issued attachments for said jurors, and they were produced in court and passed upon in the usual way, and the defendant did not exhaust his peremptory challenges, there was no error.

**4.—Same—Venue—Bill of Exceptions.**

Where, upon trial of murder, defendant made a motion for an instructed acquittal, because the State had not proved venue, but the record showed on appeal that the evidence as a whole was clearly sufficient to prove venue, there was no reversible error. Besides, the bill of exceptions was defective.

**5.—Same—Jury and Jury Law—Presumption.**

Where, upon motion of the defendant to discharge the jury because one of them was not a qualified juror, the court heard evidence on this subject and

overruled the motion, the presumption, in the absence of what said evidence was, is that the court' action was correct.

**6.—Same—Charge of Court—Self-defense.**

Where, upon the trial of murder, the defendant claimed self-defense, and the court's main charge embraced every question on this subject, which it was necessary to submit, there was no error in refusing defendant's special requested instructions.

**7.—Same—Sufficiency of the Evidence—Charge of Court—Death Penalty.**

Where, upon appeal from a conviction of murder, assessing the death penalty, the evidence sustained the conviction under a proper charge of court, there was no reversible error.

Appeal from the District Court of Freestone. Tried below before the Hon. A. M. Blackmon.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Homer L. Baughman,* for appellant.—On question of change of venue: Cortez v. State, 44 Texas Crim. Rep., 169; Streight v. State, 138 S. W. Rep., 742; Sorrell v. State, 169 S. W. Rep., 299.

On question of special venire: Hudson v. State, 28 Texas Crim. App., 323.

On question of want of proof of venue: Burch v. State, 43 Texas, 376; Scott v. State, 31 id., 409; Williams v. State, 21 Texas Crim. App., 256; Logan v. State, 2 id., 408; Donahoe v. State, 21 S. W. Rep., 372.

On question of insufficiency of the evidence: Warren v. State, 106 S. W. Rep., 132; Landers v. State, 47 S. W. Rep., 1008.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of murder and the death penalty assessed.

It is unnecessary to give but a brief statement of what the evidence, with certainty, establishes.

Appellant was a young negro man just about grown. He made his home with his father, who was a farmer and lived on a farm several miles in a southeastern direction from Fairfield, the county seat of Freestone County. Appellant seemed to have no special business, had no crop to work, or at least did not work any of his own. He seemed to have worked around in the neighborhood, hunted a good deal and loitered around generally. Deceased, J. I. Casey, lived at Fairfield. Some time before the killing he and appellant swapped horses whereby appellant became indebted to deceased for $55, and to secure it gave deceased a mortgage on the horse he at that time got from deceased, and other property, including a crop which he claimed he was to raise during 1914. Just before the killing, which occurred on Sunday, May 24, 1914, Casey ascertained appellant had no crop and was not working any that belonged to him. He, thereupon, on said date rode horseback down to see appellant, and did see him. He didn't find him at

his father's but at another place a few miles from his father's. The evidence clearly justified the jury to believe that Casey, a few days before, had endeavored to get appellant to deliver said horse to him in satisfaction of the debt, which appellant refused outright to do. When Casey found him on that Sunday morning he induced him to agree to surrender the horse to Casey in satisfaction of his debt and mortgage. The horse at the time was either at appellant's father's home in the pasture, or in another pasture at or adjoining his father's. When appellant and Casey separated, Casey was horseback and had to ride around circuitous roads several miles to reach appellant's father's, which he did, to get the horse. Appellant, however, being afoot, could cut across the fields and country, and did do so, and reach where the horse was, traveling not so far, which he did. At the house where he stayed the night before, where Casey found him, he had with him a big six-shooter. Between there and his father's he had left at a neighbor's a shotgun. In going to where the horse was he took this sixshooter along with him and also went by and got his shotgun and took that, too. When Casey reached his father's to get the horse, he found his father and his father's wife at the house, told them his mission, and his father went with him in search of the horse, wholly unarmed. The testimony clearly justified the jury to believe that appellant, knowing Casey would hunt for the horse in his father's premises, would not find him there, but would find him in a pasture of another nearby, secreted himself in an old abandoned vacant house, and when Casey got in shooting distance of him, fired upon and killed him without Casey knowing he was there, or intended any such act. Casey was on his horse when he was shot; appellant shot at him twice at the time in quick succession. Casey's horse ran some distance when Casey was shot before he fell from the horse. The testimony also clearly authorized the jury to believe and find that when Casey fell off his horse dead appellant, in a few minutes, went up to where his body was and fired two other shots with a shotgun in Casey's body, thereby shooting off practically the whole of his face and all of his teeth out, and, as some of the witnesses said, nearly shooting his head off. He then carried the body across a fence into a pasture where there was a considerable pool of water. He tied a rope around the neck of deceased and around the horn of the saddle on the horse of deceased, and dragged the body some distance to this pool of water and then dumped the body into the pool, where the body sank out of sight. He then hid both his pistol and shotgun in the woods near where the killing occurred, where they were both found by the State's witnesses and officers, identified and introduced in evidence on the trial of the cause. Where all these things occurred was a somewhat secluded place and in the woods. In these woods at the time appellant tied and secreted deceased's horse and kept him there until some time that night when he got on him and rode him several miles in an attempt to escape, and then turned the horse loose, where he was found by a neighbor the next morning. Appellant fled and evaded arrest, although diligent search was made for him, until perhaps

                                                                    (

about the first of January following, when he was found at Fort Worth, going under an assumed name, arrested, identified and taken back to Freestone County, where this trial occurred.

When Casey did not return home that Sunday night his wife became uneasy, notified the officers and friends of her fear that he had been foully dealt with. The officers and citizens in the community near where the killing occurred, of course, became aroused, and in different bodies began searching for Casey, but did not find his body until some time Monday. When Casey left home he had $30 or $40. When his body was found his pockets had been turned inside out, and no money could be found. The neighbors and officers then began a search over the whole community for appellant, but did not find him. Among other negroes, they arrested his father and confined him and them in jail for a while. It seems, after an investigation, they turned him and all the others out and became satisfied that appellant was the guilty party. Still later his father was killed. On the trial appellant claimed that he first shot Casey or at him twice in self-defense and that his father, not he, afterwards went to the body of Casey where it had fallen and shot the shotgun into his body with the result as described, and that his father and not he, dragged the body and put it in the pool of water. His claimed self-defense was submitted by the court's charge in the most favorable light to him, and the jury found against him, as they unquestionably should have done under the circumstances. The State also clearly disproved that his father shot the last two shots into the body of deceased and that his father dragged the body and put it in the pool, but, on the contrary, established with certainty that he and not his father did this. He fled the country; his father did not.

Appellant, as stated, was arrested about January 1, 1915, taken back to Fairfield, placed in jail and kept there until his trial occurred on April 22, 1915.

When the case was called for trial appellant made a motion to change the venue. When this was presented the State asked for time to file a contest, which the court allowed. It seems the contest was not at first sworn to. When this was shown, the State again asked the court for time to do this, which the court granted. There was no error in the court's action and no possible injury to appellant is shown by his action. (Baw v. State, 33 Texas Crim. Rep., 24.)

The court then heard the testimony on his said motion. He introduced but a few witnesses. Only one of the witnesses on this hearing testified that in his opinion appellant could not get a fair and impartial trial; while another one of his witnesses as distinctly swore the reverse. The State introduced more than a dozen witnesses, all of whom testified the reverse of appellant's contention. There can be no question but that the State proved the reverse of appellant's contention and the judge, under the evidence, without doubt, correctly overruled his motion for a change of venue and all the questions incident thereto.

During the progress of empaneling the jury several veniremen failed to appear and answer when their names were called. Appellant, in

effect, thereupon objected to proceeding further until these absent veniremen were produced in the order.in which their names appeared on the list. The court, in approving appellant's bill on this subject, stated that in each instance the court ordered an attachment for· the juror and that later each of the jurors who were absent when. their names were called were produced and passed upon in the usual way; that the defendant exhausted but twelve of his fifteen peremptory challenges. As held in all the cases, unnecessary to collate, the court's action was correct and presented no error whatever.

When the State closed its evidence in chief, appellant made a motion for an instructed acquittal, because the State had not proved venue. The bill in no way states what this evidence was, and is wholly insufficient on that account to present any error. However, the evidence as a whole, without any question, was clearly sufficient to prove venue. Besides, one witness swore positively the killing occurred in Freestone County.

Appellant also made a motion, it seems, after the jury had been duly organized and the trial proceeded with, to discharge the jurors and jury because he claimed that one of them was not a qualified juror. The court heard evidence on this subject and overruled his motion. What that evidence was is in no way disclosed by the record. Doubtless, if it had been it would have clearly required the court to overrule the motion. We must presume under the law that the court's action was correct.

Appellant requested several special charges on the subject of his claimed self-defense. The court correctly refused to give any of them because, as stated by the judge, his main charge embraced every question on the subject which was necessary or proper for the court to give. We think it entirely unnecessary to copy any of his special charges or that of the court, for, as stated above, the court submitted his claimed self-defense in a most favorable light to him on every point which the evidence would have authorized or suggested.

This being a death penalty case, we have given the record, the statement of facts and appellant's brief thorough consideration. We think the evidence establishes, without any sort of doubt, appellant's guilt; that the case was in every way fairly and carefully tried without any error against him having been committed. It is, therefore, our duty to affirm the case, which we do.

*Affirmed.* ·