Jeffery Leon JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 49807.

Court of Criminal Appeals of Texas.

April 23, 1975.

Rehearing Denied May 21, 1975.

Hubert W. Green, Mayo J. Galindo and P. Joseph Brake, San Antonio, for appellant.

Ted Butler, Dist. Atty., Gordon V. Armstrong and Alan E. Battaglia, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is murder; the punishment, 99 years.

The record reflects that Jif-E-Mart manager Edward Vasquez was shot and killed in his store on the afternoon of Friday, July 2, 1972. Investigators at the scene recovered a soft drink bottle on the counter from which they were able to obtain latent fingerprints.

Appellant's first four and last two grounds of error relate to the admission of his fingerprints and confession. Appellant charges that his fingerprints were obtained while he was in unlawful custody and that his written confession resulted from being confronted with the fact that his fingerprints matched those found at the scene. Appellant further contends that his confession, which resulted from this fingerprint confrontation, was tainted under the "Wong Sun" [1] doctrine.

San Antonio Police Officer Roy Aguilar testified that he was assigned to the case on July 5, the Monday following the homicide. After familiarizing himself with police reports on the homicide, which indicated that there had been several people in the vicinity of the offense, but that none had actually seen the homicide, he proceeded to inverview the witnesses. He first talked with 15 year old Carlos Vasquez [2] and his mother. The boy told Aguilar that he had seen two people leave the scene of the homicide after he heard "the shooting or this popping noise." He further told Aguilar that, acting out of fear, he had not told the first investigating officers that he recognized appellant as one of the two people leaving the scene. Aguilar further testified that he talked with John Wayne Piper and Rico Rodriguez, who also placed appellant, in possession of a gun, [3] at the convenience store on the afternoon of the homicide. Aguilar also recounted he had received information from "Crime Stop" that appellant was one of the "ones involved in the shooting or [was] seen there at the time of the homicide."

The next morning, July 6, Aguilar continued, he and Detective Arthur Munoz,

---

1. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

2. He was not related to the convenience store operator.

3. At the suppression hearing, Aguilar was not asked and did not testify that he knew that appellant had a gun in his possession at the convenience store. At the trial on the merits, Rico Rodriguez testified that he had told Aguilar during their initial interview that appellant had one in his possession.

who had joined him in the investigation, went to the apartment complex in which appellant lived with his grandparents. While Aguilar waited in the car, Munoz went to the apartment.

Munoz testified that he told appellant he wanted to talk with him at police headquarters about his presence near the convenience store at the time of the offense and that appellant's grandmother, whom he invited to go along, "said to go ahead and take the boy . . ."

Aguilar also testified that once they reached police headquarters appellant consented to be fingerprinted. Aguilar stated he then began to ask appellant some general questions concerning his presence at the scene of the homicide. At this point, Aguilar continued, he was informed by another officer that appellant's prints matched those found on the soft drink bottle recovered from the scene. The officer further testified that immediately after receiving this information he administered the Miranda warnings to appellant. Shortly thereafter, Aguilar concluded, after being read the warnings on the statement form, appellant executed a written statement admitting his participation in the homicide.

At the suppression hearing, appellant testified the officers came to his house and took him to police headquarters without his permission and that at police headquarters his fingerprints were taken, also without his permission. He further stated that police officers interrogated him concerning his participation in the offense and that he received no Miranda warnings until after he had given his confession.

Appellant's grandmother testified that Officer Munoz told her that he wanted to take appellant to police headquarters for questioning and he would bring him back.

Following the hearing, the trial court admitted the fingerprints and confession in

question. In his findings of fact and conclusions of law, the court stated:

\* \* \* \* \* \*

"Having obtained this information from Vasquez, the witness, Officer Arthur Munoz and Roy Aguilar contacted Jeffery Jones and the other boy whose nickname became known to them as Tyrone —but whose real name was Richard White. The two officers went to the apartment complex where the two boys lived, contacted both of them and took both of them to the police station for an interview. It appears to the Court that from the information that the officers had at the time of the original contact made by the two officers that there was no probab*ly* cause for the arrest of Jeffery Jones, nor was there sufficient probab*ly* cause or information or evidence against Jeffery Jones for the officers to secure a warrant for his arrest. It does not appear to the Court that the detectives did arrest Jeffery Jones or Richard White as a matter of fact. It appears to the Court that the police would not be pursuing their duties properly to overlook interviewing these two persons who were seen at a location where a murder had occurred. It also does not appear unreasonable as a matter of fact that such interview be conducted with witnesses at the police station rather than in an apartment complex where these two boys were shown by the evidence to have lived.

\* \* \* \* \* \*

"1. The questioning of the accused when the officers consider him a witness to a crime without giving him a warning either under Miranda v. Arizona or Article 38.22 [Vernon's Ann.] C.C.P. of Texas, is not illegal.

"2. That the investigation began to focus upon the Defendant, Jeffery Jones, at the time his fingerprints were found on the 7-Up bottle on the counter by the cash register where the deceased was working at the time of the killing.[4]

4. The trial court apparently meant to conclude that the interrogation began to focus on appellant when the fingerprint comparison was known.

"3. That interrogating him thereafter under circumstances where he was given a full and complete warning under both Miranda v. Arizona and Article 38.22, C.C.P. of Texas, was not error, and the confession thereafter taken is admissible as a matter of law."

■ An examination of the record appears to support the trial court's findings and conclusions. At the time the officers approached the appellant, they were engaged in an investigative effort. Unlike Ancira v. State, Tex.Cr.App., 516 S.W.2d 924, where the arresting officer testified that even before he began to interview the defendant there was no doubt in his mind that he was selling heroin, the investigation in the case at bar had not yet specifically focused on appellant as the perpetrator. It was known that he was at the scene of the offense at the time of the homicide and that he was seen hurriedly leaving it. There was, however, no evidence affirmatively linking appellant to the homicide. Only when the fingerprints from the bottle found at the scene were matched with appellant's prints did appellant's complicity in the homicide become likely. At this point the officers administered the requisite Miranda warnings. Had the officers believed that appellant was more than a witness before his prints were matched with those found at the scene, it is likely they would have sought him out when they first learned of his presence at the scene from witnesses the day before. They did not do so, but merely went to interview him the following day. Appellant was not in custody when he accompanied the officers to police headquarters.

Appellant's reliance on Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676, and Woods v. State, Tex.Cr.App., 466 S.W.2d 741, is misplaced.

In *Davis*, the defendant's fingerprints and those of 23 other youths were taken in a wholesale manner as part of police efforts to apprehend a rapist who had left his prints on the windowsill of the victim's home. The United States Supreme Court reversed, concluding that, although the officers had no reason to specifically suspect Davis' involvement in the offense, they nevertheless took his fingerprints on two occasions and questioned him numerous times during a two week period. Further, there was no evidence Davis consented to be fingerprinted or questioned.

In *Woods*, the offense occurred in a rural area. Fresh tracks led from the victim's home to that of the accused. Officers, who followed the tracks to accused's home, took him outside to match his footprints with those leading to his home. Reversing, this Court concluded that in view of the fact that a single set of fresh footprints led from the victim's home to that of accused, the officers had narrowed their investigation to accused and should have given the accused Miranda warnings before making the footprint comparison. The evidence which the officers possessed in *Woods* pointed conclusively to accused.

■ In light of the admissibility of appellant's fingerprints and confession, we overrule his contention that the evidence is insufficient to support the conviction.

■ Grounds of error five and six charge that the court erred in failing to file findings of facts and conclusions of law concerning appellant's confession before he admitted the confession into evidence. At the conclusion of the Jackson v. Denno hearing on March 7, 1973, the trial court admitted appellant's confession. Subsequently on March 12, 1973, three days after the conclusion of the trial, the court entered his written findings of fact and conclusions of law.

Recently in Shadrick v. State, Tex.Cr. App., 491 S.W.2d 681, we concluded as we do here:

"While . . . delay in entering the order is not to be commended, no harm to appellant having been shown by the delay, such orders will be accepted. Clewis v. State, Tex.Cr.App., 415 S.W.2d

654; Gaston v. State, Tex.Cr.App., 435 S.W.2d 858."

See also Foreman v. State, Tex.Cr.App., 505 S.W.2d 564; Morgan v. State, 516 S. W.2d 188 (1974).

■ Appellant's next two grounds of error charge that the trial court's findings and conclusions of law are defective because they fail to affirmatively reflect that appellant "knowingly, intelligently, and voluntarily waived his statutory and constitutional right to counsel" and that they further fail to specifically reflect that appellant had "sufficient mental capacity to understand the warnings and rights required to be given him."

The record reflects the trial court included in his written findings that appellant was "not mentally retarded—but had an I.Q. which was average in respect to manual dexterity and like matter, but was below average verbally." The court also found that Aguilar read to appellant "the top portion of the San Antonio Police Department Statement Form and that thereafter appellant signed the confession. The warning on the confession form reads as follows:

"I, Jeffery Jones, after being duly warned by Detective Roy E. Aguilar . . . that I have a right to have a lawyer present to advise me either prior to any questioning or during any questioning; and that if I am unable to employ a lawyer, I have a right to have a lawyer appointed to counsel with me prior to enduring any questioning; and that I have the right to remain silent and not make any statement at all; and further that any statement I make may be used in evidence against me at my trial; that if I decide to talk with anyone I can and that I can stop talking to them at any time I want. The above rights are continuing rights which can be urged by me at any stage of the proceedings, and I do hereby voluntarily waive these rights and give to Detective Roy E. Aguilar, Jr., the persons to whom this statement is being made the following statement."

While it would have been better practice to have made an express finding as to waiver, we conclude that the court's findings are sufficient to reflect that appellant knowingly, intelligently and voluntarily waived his right to counsel and that he possessed sufficient mental capacity to understand the warnings he was given. See Grayson v. State, Tex.Cr.App., 409 S.W.2d 850. See also Davis v. State, Tex.Cr.App., 499 S.W.2d 303.

Appellant's ninth ground of error charges the evidence is insufficient to support the court's findings that Aguilar read appellant the warning form at the top of the San Antonio Police Statement Form immediately before taking appellant's written confession.

The record reflects that Aguilar testified he gave appellant the Miranda warnings immediately after his fingerprinting, and that he again warned appellant of his rights by reading him the warnings printed at the top of the confession form immediately prior to the time appellant made his written statement. Aguilar's testimony is sufficient, despite appellant's contradictory testimony, to support the trial court's findings.

Finding no reversible error, the judgment is affirmed.