Reginald Leroy JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–81–00206–CR to 04–81–00208–CR.

Court of Appeals of Texas,
San Antonio.

April 13, 1983.

Terrence W. McDonald, Mark R. Luitjen, San Antonio, for appellant.

Bill White, Dist. Atty., Charles Conaway, Fred Rodriguez, Alan Battaglia, Asst. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

CANTU, Justice.

Appeals are taken from three capital murder convictions in which the jury assessed punishment in each case at life imprisonment. *See* Tex.Penal Code Ann. § 19.03 and Tex.Code Crim.Proc.Ann. art. 37.071 (Vernon 1974). The trial court ordered that each sentence be served consecutively. Tex.Code Crim.Proc.Ann. art. 42.08 (Vernon 1979). We affirm.

In identical briefs, appellant seeks to review thirteen instances of alleged error. The sufficiency of the evidence to support the convictions is not challenged.

Briefly stated, the record reflects that appellant and two companions, Eddie Lee Robinson and Gilbert Fordum, shot and killed Andy Anderson, Verna Lee Harris and George Tatum during the course of committing an armed robbery at the Donegan's Terrace Drugstore in San Antonio. After the robbery all three returned to appellant's girlfriend's house where the money taken from the drugstore was divided between the three. Pearl Dickson, appellant's girlfriend, and Robert Del Bryant, another acquaintance, were present when the money was divided and learned about the robbery and killings through conversations between the three assailants. No arrests were immediately made.

Robinson was tried and convicted of capital murders. *See Robinson v. State*, 548 S.W.2d 63 (Tex.Cr.App.1977), *later affirmed in unpublished per curiam opinions*, 577 S.W.2d 268, delivered on February 14, 1979. Fordum turned State's witness against appellant and his fate is undisclosed by the record.

Initially appellant complains of the trial court's failure to grant his motion for change of venue. Indictments were returned on August 15, 1974. Applications for change of venue supported by affidavits were filed on August 13, 1975.[1] A hearing

1. Numerous pretrial matters including request for appointment of co-counsel, appointment of investigator, motions for continuances, etc., were filed and heard by the trial court between September 20, 1974, the date of arraignment and August 13, 1975, the date of filing of applications for change of venue.

was held on the applications for change of venue on August 18, 1975. After presenting a number of witnesses, appellant moved that his applications to change venue be granted, believing that the applications had not been controverted. The prosecutor then informed appellant's counsel that the State had in fact filed controverting affidavits at approximately 9:07 of the morning of the hearing, immediately prior to commencing the hearing on appellant's applications. Appellant, through his counsel, insisted that he had not seen nor had been served with a copy of the State's controverting affidavits filed that morning. The trial court offered appellant additional time to present further evidence in support of his applications. Appellant initially indicated that he would require the additional time to present further testimony and the trial court recessed the proceedings until the next day and offered to grant appellant any additional time needed for a proper presentation of his motions. The following day instead of offering additional testimony as previously indicated, appellant rested on his motions without benefit of further testimony.

The record reflects the following:

THE COURT: As I recall you told me you had additional witnesses that you wanted to obtain either by telephone or otherwise to—and you wanted to keep open your—your motion for change of venue and that was my understanding.

MR. LEON [Defense Attorney]: At this time, then, I close and rest on my motion and urge the court to grant the defendant's motion for change of venue.

\* \* \* \* \* \*

THE COURT: Well, I want the record to reflect that I'm perfectly willing for Mr. La Roche to take the stand and testify for whatever point you want to raise and in connection with your motion for a change of venue. I'm not closing the door to you on your motion for change of venue to produce Mr. La Roche or anyone else.

MR. LEON: At this time I'm requesting the court to rule on the motion for change of venue. We've rested and we now rest again in case the record is confusing as to what we're doing.

THE COURT: Okay. I overrule the motion for change of venue.

Appellant argues that the testimony of some nineteen (19) witnesses presented before resting on his motions was offered in support of what he thought was the only issue on the change of venue motions, whether he could receive a fair trial in a neighboring county. He further argues that issue on an application for change of venue is joined when the State files its controverting affidavit *and serves* defense counsel with a copy of same. He, therefore, contends that issue was never properly joined because copies of the controverting affidavits were not tendered to his counsel until after the presentation of his witnesses' testimony. The thrust of appellant's argument seems to be directed at denial of due process due to lack of fair notice of the filing of the State's pleadings.

█ Appellant relies upon *Henley v. State,* 576 S.W.2d 66 (Tex.Cr.App.1978) for the proposition above stated that issue is joined when the State files its controverting affidavit *and serves* defense counsel with a copy of same. Although we cannot argue with the proposition advanced by appellant we do not find that *Henley, supra,* presents such a proposition nor that it mandates an automatic change of venue because the State fails to serve the defense with a copy of their controverting affidavit. What we do find in *Henley* is the well settled proposition that a change of venue motion drafted in compliance with Tex.Code Crim.Proc. Ann. art. 31.03 and supported by properly verified affidavits entitles a defendant to a change of venue as a matter of law, *unless the motion is controverted by the State. Henley, supra* at footnote 4, citing *Wall v. State,* 417 S.W.2d 59 (Tex.Cr.App.1967); *Flores v. State,* 493 S.W.2d 785 (Tex.Cr. App.1973). (Emphasis ours).

Although appellant claims he first learned of the controverting affidavits only

after he had tendered the testimony of some nineteen witnesses, he made no effort to ever secure a ruling of the court on his contention as a matter of law until he had tendered his testimonial evidence. Nor are we persuaded that the testimony of the nineteen witnesses was tendered solely on the issue of whether appellant could receive a fair trial in a neighboring county. In none of seven separate applications for change of venue filed in each case does appellant make any allusion to an inability to receive a fair trial in a neighboring county. To the contrary, the applications merely request the trial court to "change the venue of this case other than Bexar County, Texas...."

Neither *Durrough v. State,* 562 S.W.2d 488 (Tex.Cr.App.1978); *Hussey v. State,* 590 S.W.2d 505 (Tex.Cr.App.1979); nor *McManus v. State,* 591 S.W.2d 505 (Tex.Cr.App. 1980), all relied upon by appellant, support his contention. In fact, *Durrough v. State, supra,* and *McManus v. State, supra,* both contain language detrimental to appellant's position. Both of these cases recognize that a mandatory change of venue may be waived when the appellant takes a position other than the insistence that his motion be granted summarily for lack of an issue on the matter. We quote from *McManus v. State,*

> However, it is clear that a defendant may waive his per se right to a change of venue. If the State has filed no controverting affidavit, and the defendant proceeds to a hearing without objecting that there is no issue of fact to be tried and that he is thus entitled to the change as a matter of law, he waives his right to the per se change of venue. *Puryear v. State,* 510 S.W.2d 356 (Tex.Crim.App. 1974); *Lewis v. State,* 505 S.W.2d 603 (Tex.Crim.App.1974); *see also Von Byrd v. State,* 569 S.W.2d 883 (Tex.Crim.App. 1978) (footnote # 9). Where the defendant, without such objection, allows the trial court to hear the merits of the issue and to thus exercise its discretion in determining the issue of fact, he cannot thereafter argue that no issue of fact was

raised and that he was entitled to the change as a matter of law.

591 S.W.2d at 516.

 We hold that appellant's failure to insist upon his per se right to a change of venue prior to invoking the trial court's discretionary authority to hear evidence constitutes a waiver of that right. *McManus v. State, supra,* and cases cited therein. Appellant's subsequent refusal to offer further evidence after the trial court granted additional time can only be interpreted as a belated effort to insist upon a per se entitlement to the granting of his motions.

 The trial court would have been authorized to grant the State additional time to file its controverting affidavits if they in fact were not already filed. *Thompson v. State,* 77 Tex.Crim.R. 550, 179 S.W. 561 (1915). In view of appellant's refusal to proceed with proof we can perceive no harm to appellant arising from the absence of notice of the filing of the State's controverting affidavits. Appellant's first ground of error is overruled.

Appellant contends in his ground of error number two that the trial court erred in admitting his confession over objection in violation of the Fifth Amendment to the United States Constitution, Tex. Const. art. I, § 10, and Tex.Code Crim.Proc. art. 38.22 (Vernon 1967).

Appellant argues that the delay between the time of his arrest and the time he was taken before a magistrate, coupled with the events that transpired during that time, clearly indicate that the written confession was involuntarily given.

In ground of error number three, appellant contends that the written confession was obtained as a result of an illegal arrest, in violation of the Fourth Amendment to the United States Constitution and Tex. Const. art. I, § 9.

The testimony adduced at a hearing on appellant's motion to suppress the confession reflects that San Antonio Police Officers Frank Hinojosa and Robert Fleming, shortly after July 15, 1974, were investigating a triple killing at the Donegan's Terrace

Drugstore. Hinojosa and Fleming received information that a negro male, whose first name was Reggie or Reginald, and who lived with a Pearl Dickson on Del Rio Walk, had been seen at the drugstore on the day of the killings. They received the additional information that this individual had problems with his teeth or possibly was missing his front teeth. The officers possessed no information at that time that a person meeting that description had been involved in the robbery-killings, and appellant was not at that time a suspect.

Between July 15, 1974, and July 22, 1974, several individuals known to frequent the drug store were at the homicide office and had undergone fingerprinting.

On July 22, 1974, Officers Hinojosa and Fleming requested two Task Force officers to go to the Del Rio Walk address to locate Pearl Dickson and the individual known as "Reggie" to see if they would come in to the homicide office and divulge any information they might have that would assist in the investigation.

Task Force Officers A.P. Flores and Robert Jordan went to the Del Rio Walk location and saw two individuals later identified as appellant and Pearl Dickson standing outside the premises. Officer Flores asked Dickson if she and appellant would accompany them to the homicide office to speak with detectives investigating the Donegan Drugstore killings. Both agreed to accompany them back but advised Officer Flores that they were about to be married and needed to obtain their blood tests. Officer Flores offered to return them to their residence after they were through at the homicide office. According to Officer Flores, appellant specifically requested to accompany Dickson to the homicide office. Neither appellant nor Dickson were under arrest at that time.

Appellant was taken to Officer Hinojosa's office and was advised of the nature of the

investigation, was advised of his rights and was asked if he would reveal to Hinojosa what he might have seen at the drugstore.

Appellant revealed that he had been to the drugstore on July 15, 1974, around 2:00 p.m. to obtain some Robitussin. Appellant stated that he had observed a lady paying a bill or cashing a check and that he then left. When asked if he had any objections to being fingerprinted, appellant replied, "No, I'll even take a lie detector."[2] Shortly after appellant was fingerprinted, Hinojosa and Fleming were informed that appellant's prints matched with latent prints found at the scene. At that point appellant was arrested, advised of the charges being lodged against him and again advised of his rights. Thereafter followed a period of interrogation of appellant by Hinojosa. During the interrogation appellant was told about the matchup in fingerprints and appellant replied that his prints may have been left on the drugstore safe when he leaned on it while Tatum, the pharmacist, performed oral copulation on him as a favor for receiving the Robitussin syrup. The polygraph test was then administered at appellant's request but the results were inconclusive. There followed further interrogation of appellant by Fleming and eventually a written statement was obtained from appellant. Later that day around 5:00 p.m. appellant was transported to the Bexar County Jail to be booked for capital murder. The following day he was placed in several lineups.

On July 29, 1974, Hinojosa contacted appellant at the jail and again read him his rights.[3] Hinojosa then informed appellant that the investigating officers had spoken to Gilbert Fordum, and appellant immediately indicated his desire to confess. Appellant was then transported back to the homicide office and again warned of his rights. After indicating that he understood his

2. Latent fingerprints had been found at the scene which the officers believed had been placed there at or about the time of the offenses.

3. All references to reading and advising appellant of his rights refer to readings from San Antonio Police Department Form No. 66–3, a yellow card containing the warning drawn from *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

rights, appellant's statement was reduced to writing, read and signed. Hinojosa indicated that the statement was given without the use of threats or force, and without promises being made to appellant.

Appellant did not testify at the hearing on his motion to suppress but did testify outside the presence of the jury on his in trial motion to test the validity of his arrest.

Essentially his testimony refuted the notion that he had voluntarily gone to the homicide office on July 22, 1974. According to appellant he accompanied the Task Force officers because he believed that he was under arrest at that time. He denied consenting to being fingerprinted but acknowledged that no force was ever used to get him to appear at the homicide office.

■ Hinojosa believed that appellant was taken before a magistrate the evening of July 22, 1974, immediately after being booked into jail. Appellant suggests in his brief that he was actually not magistrated until seven days after being arrested. We are not directed to any portion of the record supporting this assertion and our examination of the sixteen volume record does not lend any credence to the statement. In any event, appellant concedes that mere delay in bringing him before a magistrate would not be sufficient to declare the confession involuntary as a matter of law. He argues that this delay nevertheless supplies the causal connection between the failure to take him before a magistrate and his confession. *Von Byrd v. State,* 569 S.W.2d 883 (Tex.Cr.App.1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073; *Maloy v. State,* 582 S.W.2d 125 (Tex.Cr.App.1979). Even if we were to accept appellant's statement that he was not magistrated for seven days following his arrest, we are not directed to any event transpiring between the time of arrest and the subsequent confession on July 29, 1974, that could form the requisite causal connection invalidating the confession. It appears that appellant's re-

liance is directed at the actions of Officer Hinojosa in playing one suspect (Fordum) against the other (appellant) in order to obtain the confession. In view of the numerous warnings given appellant prior to July 29, 1974, prior to interrogation at the jail on July 29, 1974, and once again immediately before the actual taking of the confession at the homicide office we cannot say that the trial court erred in holding the confession to be voluntarily given.

■ Additionally, voluntariness is not destroyed, and a confession induced by deception or trickery is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process. *Dotsey v. State,* 630 S.W.2d 343 (Tex.App.—Austin 1982, no pet.); see especially, *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

While there is ample evidence that appellant understood the warnings given to him on the various occasions, we note that appellant never suggested his desire to speak to an attorney. To the contrary, the record reflects that no attorney was appointed to assist him until September 9, 1974, because he resisted efforts by the court administrator in determining his status as an indigent.

The evidence supports the trial court's findings of fact and conclusions of law filed in compliance with the provisions of Tex. Code Crim.Proc.Ann. art. 38.22, § 2 (Vernon 1967).[4] We are not at liberty to disturb the findings of the trial court finding support in the record. *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258. Appellant's ground of error number two is overruled.

The evidence, as previously recounted, reflects that appellant, along with others, was being interviewed as part of an ongoing investigation into the robbery-killings at the drugstore. Appellant freely and voluntarily went to the homicide office, spoke with officers and submitted to fingerprint-

---

4. Since amended by Acts 1977, 65th Leg., p. 935, ch. 348, § 2, eff. Aug. 29, 1977; Acts 1979, 66th Leg., p. 398, ch. 186, §§ 4 and 5, eff. May 15, 1979; Acts 1981, 67th Leg., p. 711, ch. 271, § 1, eff. Sept. 1, 1981.

ing. There is nothing in the record indicating that appellant was ever a suspect until a fingerprint comparison gave officers a reason to believe that appellant was criminally linked to the robbery-killings. *Cf. Jones v. State,* 522 S.W.2d 470 (Tex.Cr.App. 1975).

 It is well established that probable cause to arrest exists where the facts and circumstances within the knowledge of the arresting officer and of which he has reasonable trustworthy information which would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *Hawkins v. State,* 628 S.W.2d 71 (Tex.Cr. App.1982); *Jones v. State,* 565 S.W.2d 934 (Tex.Cr.App.1978). We hold that probable cause to arrest appellant existed when the arresting officer learned that appellant's fingerprints were found on the safe of the Donegan's Terrace Drugstore, coupled with other facts placing appellant at the scene learned as a result of the interview voluntarily consented to. Appellant's arrest was not illegal and, therefore, did not taint the subsequent confession we have held to have been voluntarily given. Appellant's third ground of error is overruled.

Appellant's fourth ground of error complains of trial court error in admitting physical items, obtained as a result of a search of his residence in violation of the Fourth Amendment to the United States Constitution; Tex. Const. art. I, § 9; and Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon 1974). On appeal he challenges the voluntariness of his girlfriend's consent to search.

The record reflects, through appellant's own testimony at a hearing held outside the presence of the jury, that appellant occasionally lived with Pearl Dickson at the Del Rio Walk residence. On July 22, 1974, after appellant and Dickson were questioned at the homicide office, Officers A.P. Flores and Robert Jordan took Dickson back to her home. She was not under arrest. Upon arriving at her residence she agreed to sign a consent to search form which recites that she was informed of her right to be free from a warrantless search and her right to refuse consent to search. The signed form recites that consent to search was given by Dickson of her own free will. As a result of a search conducted of the premises in reliance upon the consent obtained from Dickson certain items of clothing were recovered and subsequently introduced into evidence. The items recovered consisted of a pair of tennis shoes, a pair of trousers and a shirt. Testimony at trial revealed that blood samples were removed from the pair of trousers seized and that the blood sample was of type "O". Other testimony disclosed that two of the robbery-killing victims had type "O" blood.

At the hearing seeking suppression of these items, appellant complained that permission was not obtained from him to search the residence. Appellant never challenged the voluntariness of Dickson's consent.

 Appellant is precluded from seeking review of a court ruling on a ground not comporting with his trial court objection. *Winters v. State,* 626 S.W.2d 557 (Tex.App. —Waco 1981, no pet.); *Williams v. State,* 549 S.W.2d 183 (Tex.Cr.App.1977). Nevertheless, the State's evidence disclosed that Dickson had at least equal, if not greater, control over, and use of, the premises and thus could consent to a search of the premises. It is well established that third parties have authority to consent to a search when they have equal control over and equal use of the premises being searched. *Collins v. State,* 548 S.W.2d 368 (Tex.Cr. App.1977); *Swift v. State,* 509 S.W.2d 586 (Tex.Cr.App.1974). Appellant's fourth ground of error is overruled.

Appellant next complains in his fifth ground of error of the trial court admitting testimony concerning the circumstances surrounding the death of one of the victims. Specifically, appellant sought to exclude testimony of police Officer Francis Akeroyd relative to his observations at the scene of the triple killings. He testified that upon observing the bodies of the three victims only the woman, Verna Lee Harris, showed signs of life.

In the absence of an objection, Akeroyd stated Harris "... was moaning; she was gurgling with, more or less like she was gagging on blood and she was trying to breath." Two E.M.S. technicians testified that they observed Harris breathing and gurgling. Objection was interposed and the trial court overruled the objection.

■ It has consistently been held that the physical facts and circumstances surrounding a homicide, including a verbal description of a body, are admissible in evidence as tending to throw light on the transaction and to reveal the nature and circumstances of the homicide. *Hall v. State,* 619 S.W.2d 156 (Tex.Cr.App.1980); *Harrington v. State,* 547 S.W.2d 621 (Tex. Cr.App.1977); *Luck v. State,* 588 S.W.2d 371 (Tex.Cr.App.1979); *Guillory v. State,* 400 S.W.2d 751 (Tex.Cr.App.1966).

■ Because Officer Akeroyd testified to the same facts without objection, subsequent admission of the same or similar testimony over objection will not constitute reversible error. *Green v. State,* 542 S.W.2d 416 (Tex.Cr.App.1976).

Appellant's sixth ground of error is directed at alleged trial court error in admitting testimony concerning extraneous offenses committed by appellant prior to July 15, 1974. The extraneous offenses complained of refer to appellant's prior use of controlled substances and possession of a weapon. During the State's case in chief on direct examination of Robert Del Bryant, the prosecutor informed the trial court, outside the presence of the jury, that he intended to show that appellant was addicted to heroin to establish a motive for the robbery and killings.

Bryant then testified in the jury's presence that he, appellant, Eddie Lee Robinson and Gilbert Fordum, were all regularly using heroin prior to the date of the alleged offenses. Bryant admitted to being addicted to heroin during this period of time and described what it was like to be sick for want of heroin. Bryant further testified that immediately prior to the commission of the alleged offenses, appellant had the same sick characteristics, and that appellant told him that he, appellant, was sick. Shortly after the offense, appellant and others bought heroin and shot-up with heroin. According to Bryant, appellant's ill symptoms disappeared after shooting up with heroin.

Appellant contends that because he did not testify or offer any evidence tending to raise a defense, the admission of these extraneous offenses during the case in chief was clearly erroneous and prejudicial.

■ The well established rule of law provides that one accused of a crime is to be tried for the offense charged and none other. Proof of extraneous crime becomes admissible only as an exception to the rule. *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr. App.1973); *Hafti v. State,* 416 S.W.2d 824 (Tex.Cr.App.1967). Thus, before evidence of collateral crimes is admissible, a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972).

■ We need not, however, consider the numerous exceptions discussed in *Albrecht v. State, supra,* because our disposition of appellant's contention as it pertains to the possession of a firearm must be disposed of under another rule of law. Although appellant objected when the State elicited testimony that appellant possessed a .24 caliber pistol prior to the date of the robbery-killings, no effort was made to secure a ruling from the trial court. Thus the error, if any, was not properly preserved. *Stoner v. State,* 585 S.W.2d 750 (Tex.Cr. App.1979). Furthermore, subsequent testimony referring to appellant's possession of a firearm prior to the date in question was elicited without any objection, thereby rendering error, if any, not reversible. *Alvarez v. State, supra; Torres v. State,* 552 S.W.2d 821 (Tex.Cr.App.1977); *Watson v. State,* 532 S.W.2d 619 (Tex.Cr.App.1976); *Autry v. State,* 159 Tex.Cr.R. 419, 264 S.W.2d 735 (1954).

It was the State's theory throughout the trial that the robbery-killings were the di-

rect result of the co-defendants' desperate need to obtain money in order to satisfy a serious heroin addiction. Appellant's confession in fact admitted that "dope" was obtained after the killings. The State, therefore, reasoned that heroin addiction and the need to satisfy a narcotic craving supplies the motive for committing the offenses charged.

 Motive is not an essential element of a criminal offense. Therefore, motive need not be proved in order to establish the commission of an offense. *Bush v. State,* 628 S.W.2d 441 (Tex.Cr.App.1982); *Rodriguez v. State,* 486 S.W.2d 355 (Tex.Cr.App. 1972). But evidence of motive is a type of evidence which may be used to establish proof of the commission of an offense if it is known to exist because it is relevant as a circumstance tending to prove the commission of an offense. *Bush v. State, supra; Rodriguez v. State, supra.*

 To be admissible as proof of motive, however, the proposed testimony must fairly tend to raise an inference in favor of, the existence of a motive on the part of the accused to commit the alleged offense for which he is on trial. *Bush v. State, supra; Rodriguez v. State, supra.* We think the testimony complained of clearly does more than raise an inference in favor of the existence of a motive and was, therefore, admissible to show the moving force producing the emotion that in turn provoked or incited the commission of the criminal offense. *Cf. Foy v. State,* 593 S.W.2d 707 (Tex.Cr.App.1980).[5] Appellant's sixth ground of error is overruled.

Appellant next alleges that the trial court erred in not permitting him to offer evidence that State's witness Robert Del Bryant was permitted to sign a personal bond in the amount of $75,000.00 as showing bias and prejudice on the part of the witness in favor of the State. Bryant was a crucial witness for the State, but the record does not reflect that he was ever a suspect in the case. Prior to trial, Bryant indicated his intention to return to his home state of Louisiana, and the State secured an order placing him in custody under a material witness bond in the amount of $75,000.00 or $25,000.00 in each case. Because he was unable to secure his release on bond, he was permitted to sign a personal bond in the amount of $75,000.00.

Appellant argues that the court should have allowed him to cross-examine Bryant to show that a bias and prejudice existed in favor of the State because he had been permitted to sign the personal bond without objection from the State. The record reflects that Bryant did in fact testify during cross-examination in the presence of the jury that he had been placed in jail and had secured his release by signing his own bond. Thus, substantially the same testimony claimed to have been excluded was in fact before the jury. Appellant claims that the trial court's ruling hindered the development of his defensive theory although we are not told what defense was sought to be developed nor does the court's charge reflect the raising of a defensive posture.[6]

Appellant relies upon *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App.1975) and *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in arguing that he should have been permitted to use testimony concerning the release of Bryant to show bias and prejudice on the part of the witness in favor of the State. Initially, we recognize that Bryant was never a suspect in any of the robbery-killings nor do we find anywhere in the record that there was presently pending against him any criminal action which could support a basis for an inference of undue pressure due to any vulnerability to which he might be exposed. In *Evans v. State, supra,* the witness in question was, at the time of Evan's trial, himself under indictment for an unrelated

---

**5.** The trial court's charges included a limiting instruction that the jury should consider mention of narcotic violations by appellant solely to determine the motive of appellant, if any, in connection with the offenses charged.

**6.** In his sixth ground of error appellant admits he did not raise a defense.

offense in the same court. The proof in *Evans* revealed that the witness was receiving preferential or special treatment in the handling of his own case by the State and that he was concerned that he might be a suspect himself because of identification issues raised by the evidence tending to implicate him. For these reasons the Court of Criminal Appeals concluded that the defense should have been permitted to develop evidence which might afford a basis for an inference of undue pressure. *Davis v. Alaska, supra,* involves a similar situation presenting the same compelling reasons for permitting cross-examination of the witness into the areas of bias, interest and motive.

■ Generally, great latitude should be allowed the accused to show a witness's bias or motive to testify falsely against him. However, trial courts have considerable discretion as to how and when bias may be proved and as to what evidence is material for that purpose. *Hodge v. State,* 631 S.W.2d 754 (Tex.Cr.App.1982); *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979); *Chvojka v. State,* 582 S.W.2d 828 (Tex.Cr. App.1979); *Evans v. State, supra.*

■ Appellant was permitted extensive cross-examination of Bryant into areas of impeachment. Nothing in the record compels the type of cross-examination appellant claims he was denied. The singular fact that a material witness signs a personal bond does not support an inference that the testimony expected from that witness will be biased towards either side. The bond is to secure the attendance of the witness at trial and not to guarantee the nature of his testimony. Tex.Code Crim. Proc.Ann. art. 24.24 (Vernon 1966) provides that a material witness unable to give security shall be released by the court without the need for security. Tex.Code Crim.Proc. Ann. art. 24.25 (Vernon 1966) permits the release of a material witness upon his personal bond at the discretion of the trial court. Bryant was released by the trial court on his personal bond as the law permits and the fact that the State interposed no opposition does not raise the inference that the witness was under some compulsion to testify in any given manner. The only logical inference that can arise is that the trial court believed that the personal bond signed by Bryant would insure his attendance at trial, which it in fact did. Appellant has failed to show error and his contention is overruled.

Appellant next asserts that the trial court erred in admitting the testimony of the co-indictee Gilbert Fordum, concerning statements made by appellant on December 6, 1974. Appellant contends the testimony violated his privilege against self-incrimination under the federal and state constitutions as well as the provisions of Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1979).

The co-indictee Fordum testified for the State regarding details leading up to the robbery-killings and following the killings. Upon cross-examination, counsel for appellant elicited the fact that Fordum had given a statement to Officer Fleming on July 30, 1974. Counsel for appellant sought to impeach the witness by showing that much of what Fordum had testified to before the jury was not included in the statement given to Officer Fleming. During this attempt to discredit Fordum the following transpired:

[Questions By Mr. Leon—Defense Attorney]

Q: Now, on July 30th, you told Detective Fleming that you were telling the truth about what took place, weren't you?

A: Yes, sir, I did.

Q: It was over a year ago. Here today, some year and three months later or two months, there are a lot of things that you are saying that you didn't say to Detective Fleming at that time.

A: Right, I didn't find out then.

Q: You *found* out about these things later?

A: Yes.

Q: All right, so that on July 30th, 1974, the reason why your statement at that time is different than now is just that at the time since July 30th, 1974, you have learned from other sources what

you told Detective Fleming wasn't correct?

A: Would you repeat yourself?

Q: From July 30th, 1974 until today, somebody has told you something which changed your mind as to what took place on that date?

Q: Yes, your client told me.

Q: You're saying that based upon what he told you after that that you have now changed your mind as to what took place on July 15th?

A: I didn't really know what happened until your client told me. Now, do you want to know what he told me?

Q: Let me ask you when you say that killing took place?

A: Could you tell me what Wednesday the pretrial was on?

MR. RODRIGUEZ [Prosecutor]: December 6th.

A: After December 6th, his client made the statement not only to me but to him, too, told me he killed—no, he asked me. You asked me to bring it up—

THE COURT: Wait just a minute.

[Questions by Mr. Leon—Defense Attorney]

Q: Are you saying that it has been since July 26th, 1974 or rather since July 30th, 1974, that based upon other information that you have learned from whatever source, that this is why you have testified differently today than you did on July 30th of '74?

MR. CONOWAY [Prosecutor]: I object to that question. It's a misstatement of what he said. That sometime apparently on December 6th, that his client told him and apparently in the presence of Mr. Leon, that he had killed the people.

MR. LEON: I object to that. It is not admissible. He can answer the question without going into that.

MR. CONOWAY: The question as framed is a misstatement of what his answer was to the previous question. That's my objection.

MR. LEON: I ask the Court to rule on my objection to his statement as to what took place on December 6th of '74, rather as to what was said at this time. It may become admissible but at this time, as to what was said on December 6th of '74.

THE COURT: I overrule the objection.

BY MR. LEON:

Q: Mr. Fordum, are you saying then that until that time, you didn't know of your own knowledge and you say that was November or December of '74 and until that time you didn't know of your own knowledge anything more than what I said on July 30th of '74?

A: I knew a little bit. I couldn't put it all together until that date there.

Q: What was it you couldn't put altogether? Was it because of your drug problem?

A: No, because I didn't go into the store. I didn't know what happened until it came out of his mouth of what happened with him and Mr. Robinson together.

On the same date when he told you that he killed the people in that store, that's when—

MR. LEON: Again, I'm going to object to—I don't know when this took place or where it took place.

THE WITNESS: You know where it took place.

MR. LEON: Judge, may I have a hearing outside the presence. This is so harmful, so highly prejudicial that—

THE COURT: The jury will please step outside.

A hearing was then had outside the presence of the jury and the trial court ruled that the testimony would be admissible. Defense counsel did not pursue the matter further. On redirect examination Fordum testified that he did not see appellant after July 15, 1974, until he, appellant and co-indictee Robinson, were present in a courtroom. When the State attempted to elicit details of the subsequent meeting between the parties defense counsel objected. The trial court then ruled that the State would

not be permitted to elicit the details of statements made by appellant in Fordum's presence on December 6, 1974. The trial court, however, permitted Fordum to testify that he had learned the details of what transpired in the drugstore while in the jury box as appellant and Robinson talked to each other on December 6, 1974.

■ In an attempt to discredit the witness Fordum, appellant inquired into an area in which the answers were likely to be and were, in fact, damaging. Fordum's efforts to clarify the discrepancies created by appellant's attempted impeachment were legitimate responses to calculated inquiries. Fordum was entitled to explain why he possessed more knowledge about the event during live testimony over a year later than he did at the time he gave his statement to Officer Fleming as a legitimate response to a probing question. *Underhill's Criminal Evidence,* 4th Edition, § 430, p. 881. Appellant elicited the responses complained of and cannot now claim error on appeal.

■ Since appellant successfully discredited Fordum by showing that much of what he claimed to know about the killings was not in his prior statement, it was permissible for the State to fully explain its failure to be in the statement in order that the matter be fully understood. Tex.Code Crim.Proc.Ann. art. 38.24 (Vernon 1979). It matters not that the evidence needed to fully explain is not ordinarily admissible. *Wintters v. State,* 616 S.W.2d 197 (Tex.Cr. App.1981); *Parr v. State,* 557 S.W.2d 99 (Tex.Cr.App.1977).

■ But even if the testimony complained of was not admissible, we are not inclined to hold that reversal is mandated since the same incriminating facts were otherwise properly proved through the testimony of Bryant and through the contents of appellant's own confession. *Brantley v. State,* 522 S.W.2d 519 (Tex.Cr.App.1975). Appellant's eighth ground of error is overruled.

Appellant's ninth ground of error complains of the trial court's refusal to instruct the jury on accomplice testimony of the witness Bryant as requested in his instruction. Appellant's requested instruction submitted the question of Bryant's complicity as a fact issue for the jury. The trial court denied the requested instruction.

■ Appellant contends that Bryant's status as an accomplice was established as a matter of law, but argues that alternatively, a fact issue on his status was raised requiring the submission of such issue to the jury. *See Lafoon v. State,* 543 S.W.2d 617 (Tex.Cr.App.1976). The record does not support appellant's contention.

Bryant testified that he was asked if he wanted to drive someplace or knock off something. He did not know what was going to be knocked off and did not pay attention to further conversations between appellant, Robinson and Fordum. According to the testimony of Fordum, Bryant did not know about the planned robbery. Appellant's own confession corroborates the fact that Bryant did not know about the robbery. Bryant did not share the proceeds of the robbery because, "... I do nothing on the robbery and they're going to give me nothing." Heroin was purchased following the robbery-killings and Bryant was permitted to share in some of the heroin paid for out of the money from the robbery.

Appellant contends that because Bryant learned about the robbery-killings after appellant, Robinson and Fordum returned to Dickson's place, that this knowledge coupled with the sharing of heroin raised a fact issue which required the submission of his requested instruction. Major reliance is placed upon *Odom v. State,* 438 S.W.2d 912 (Tex.Cr.App.1969), in which a witness was held to be an accomplice because she took some of the money knowing that it was taken in a robbery. *See also Stephenson v. State,* 152 Tex.Cr.R. 624, 216 S.W.2d 586 (1949).

The State counters with the case of *Ballard v. State,* 519 S.W.2d 426 (Tex.Cr.App. 1975), which holds that one receiving stolen property taken during the course of a murder, knowing the property to be stolen, is not an accomplice to the offense of murder. The facts in *Ballard* are analogous to the

facts before us although *Ballard* was not a capital murder case. Such facts would support capital murder under Tex.Penal Code § 19.03(a)(2) (Vernon 1974). *See Duffy v. State,* 567 S.W.2d 197 (Tex.Cr.App.1978). We believe the initial inquiry to be: could Bryant be indicted and punished for the crime for which appellant was being tried? If he could be indicted and punished, he is an accomplice; otherwise, he is not an accomplice. Tested under this rule, Bryant was not an accomplice, for he could not be prosecuted and convicted of the offense for which appellant was tried, capital murder. *Cf. Liegois v. State,* 73 Tex.Cr.R. 142, 164 S.W. 382 (1914). The fact that Bryant shared in heroin purchased with stolen money might expose him to prosecution for possession of a controlled substance, an offense probably incapable of proof under the instant facts, but, nevertheless, a distinct and separate offense from that for which appellant was tried. We think the instant case to be similar to *Burton v. State,* 93 Tex.Cr.R. 335, 247 S.W. 869 (1923), wherein the witness was the beneficiary of an accomplice's gratuitous gift of liquor in a prosecution for unlawful sale of intoxicating liquor. We find no evidence that Bryant was an accomplice to the offenses of capital murder [7] and the trial court did not, therefore, err in refusing to charge that Bryant was an accomplice as a matter of law or to submit that issue to the jury. *Villarreal v. State,* 576 S.W.2d 51 (Tex.Cr.App.1978), *cert. denied,* 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979). Appellant's ninth ground of error is overruled.

■ Appellant next contends that the trial court erred in not instructing the jury on circumstantial evidence. Appellant's confession established his involvement in the alleged offenses. Bryant testified that appellant admitted to shooting two of the people in the drugstore. A charge on circumstantial evidence is not required to be given where evidence of an admission by the accused that he killed the

deceased is present. *Barefoot v. State,* 596 S.W.2d 875 (Tex.Cr.App.1980); *Knight v. State,* 538 S.W.2d 101 (Tex.Cr.App.1975). Direct testimony from any source that the accused was an actor in bringing about the death of the deceased characterizes the case as one of direct evidence. *Williams v. State,* 566 S.W.2d 919 (Tex.Cr.App.1978). Any doubt as to the entitlement to a circumstantial evidence charge has now been dispelled by the Court of Criminal Appeals in its recent decision in *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App.1981). Appellant's tenth ground of error is overruled.

■ Appellant next contends that the trial court erred in not granting his requested motion for mistrial when the prosecutor, during final arguments, referred to sparing the life of a little child. During final arguments the prosecutor argued that George Tatum was killed because he knew appellant, and the other two victims were killed solely because they happened to be in the store and might be able to identify appellant and Robinson. Because the summations correctly drew support from the evidence, no objection was lodged by appellant.

> Shortly thereafter the prosecutor argued: ... Let's keep it down to a bare minimum. You see? They were going to kill. No question about it. But, the tragedy behind the whole thing and the frightening thing is that just perhaps, some little child might have been in the restroom. You think they would have spared that little child?

Appellant's objection was sustained and the jury was instructed to disregard. Appellant's motion for mistrial was overruled.

The import of the prosecutor's argument was that anyone in the store would have been killed so that appellant could not be identified. Such argument was a reasonable deduction from all the evidence. Although there was no evidence that a child was ever in the store during the criminal acts, we do not believe that reference to a

---

7. Corroboration, if required, would be directed at the facts which elevate murder to capital murder; in this case as to the robbery. *Forten-* *berry v. State,* 579 S.W.2d 482 (Tex.Cr.App. 1979).

child changes the effect of the argument such as to require reversal. We think the trial court's prompt admonishment to the jury necessarily removed whatever harm, the remark may have generated. *See Smith v. State,* 513 S.W.2d 823 (Tex.Cr.App. 1974). Appellant's eleventh ground of error is overruled.

Appellant once again alleges error arising from prosecutorial remarks during final arguments. A mistrial was requested by appellant when the prosecutor made reference to appellant being a beast. There is some confusion in the record as to whether the prosecutor was referring to appellant as "a beast" or whether he meant to refer to the co-defendant Robinson as the beast. The trial court on his own instructed the jury to disregard the prosecutor's remarks but denied the motion for mistrial. The prosecutor then stated: "I suggest to you not that this defendant is the beast, but that Eddie Lee Robinson is."

In view of the prosecutor's subsequent clarification and because of the trial court's prompt action we perceive no harm to appellant requiring reversal. *Cf. Howard v. State,* 453 S.W.2d 153 (Tex.Cr.App.1970); *Morris v. State,* 432 S.W.2d 920 (Tex.Cr. App.1968); *Hess v. State,* 168 Tex.Cr.R. 425, 328 S.W.2d 308 (1959). Appellant's twelfth ground of error is overruled.

In his final ground of error appellant asserts that the utilization of Tex.Penal Code Ann. § 12.31(b) in the jury selection process denied him due process as provided for in the Fifth and Fourteenth Amendments to the United States Constitution and Tex. Const. art. I, § 19.

Appellant relies upon *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), and claims that jurors were excluded on grounds broader than *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We have not been favored with the court reporter's transcription of the jury selection nor is there anything in the brief other than the bald assertion that jury selection under § 12.31(b) is unconstitutional and its utilization man-

dates a reversal. These appeals were originally docketed in the Court of Criminal Appeals on October 14, 1980, and were transferred to this Court and received on September 1, 1981. During that time nothing appears to have been done to see that the transcription of the jury selection was included in the appellate record. We are unable to ascertain from a reading of the record whether the proceedings were even transcribed.

Since this appeal was governed by Tex. Code Crim.Proc.Ann. art. 40.09 (Vernon 1979), prior to its amendment in 1981, appellant had opportunity to have the record supplemented up until the record was transmitted to the appellate court. Art. 40.-09(13). At the time of the filing of appellant's brief, appellant could have taken whatever action he deemed necessary to assure that the record was as complete as was necessary for a review of his proposed grounds of error. Even after the State pointed out in its reply brief that the contentions sought to be reviewed could not be done in the absence of a complete record, nothing seems to have been done to remedy the problem. We note that appellant's brief was filed on July 7, 1980, that the State's brief was filed on September 23, 1980, and that the record was ordered transmitted to the Court of Criminal Appeals on September 24, 1980. Because appellant knew of the condition of the record since receiving notice of its completion sometime soon after March 18, 1980, we can only assume that no serious effort was made to see that jury voir dire was included in the record for appeal purposes. Appellant's designation of the record on appeal does not specifically request the jury voir dire although it does specifically request that jury arguments be included. Several extensions of time for the filing of the statement of facts were obtained during the preparation of the record.

Because we are not able to review alleged error not reflected by the record, nothing is presented for review. There is no claim by appellant that the jury that convicted him was prosecution prone and nothing in the record indicates that such was so. We

doubt that the inclusion of jury voir dire would present error requiring reversal even if appellant's contentions are true in view of the jury's refusal to assess the death penalty. *See Sanne v. State,* 609 S.W.2d 762 (Tex.Cr.App.1980); *Graham v. State,* 643 S.W.2d 920 (Tex.Cr.App.1981) (on State's motion for rehearing 1983). Appellant's thirteenth ground of error is overruled.

The judgment of conviction is affirmed.