Gary HARRINGTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 52626.

Court of Criminal Appeals of Texas.

March 9, 1977.

Percy Foreman & Richard M. DeGuerin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Andy Tobias, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of murder; Article 1256, V.A. P.C. (1925); the punishment is imprisonment for life.

Appellant and his wife were jointly indicted for the murder of their two year old daughter. Appellant's motion for severance was granted and his wife was tried first.[1] Appellant contends that the evidence is insufficient to support the conviction; that the court erred in charging the jury on the law of principals; and that the court erred in admitting photographs of the deceased.

The record reflects that the deceased was the two year old daughter of appellant. Of particular importance is the testimony of Assistant Medical Examiner Dr. Giles Green who performed the autopsy on the deceased. Dr. Green described the child as thin, very emaciated, the ribs were very prominent, and the spaces between the ribs were sunken in. There were bruises and abrasions on many parts of the child's body and deep cuts on the child's fingers made with a sharp instrument. The right lung had multiple areas of hemorrhage. The child was 27 inches long and weighed 12¾ pounds. Dr. Green testified that a normal two year old child should be from 30 to 32 inches long. The autopsy revealed that the child died of starvation. Dr. Green stated that since malnutrition will stop a child's growth, his opinion was that the state of malnutrition existed from several months to as much as six months or a year. The child was not suffering from any disease other than the extreme degree of malnutrition which caused her death.

Gail Reise, a neighbor, was a frequent visitor at appellant's apartment and sold Avon products to Mrs. Harrington. She was never allowed in the apartment unless she called first. If she happened to stop by the apartment unannounced no one would answer; but if she went back to her own apartment and called, Mrs. Harrington would meet her at the door. Mrs. Reise only saw the child once when the baby was six months old. On all the other visits she never saw or heard the baby, and the door to the baby's room was always closed. Mrs. Reise, who had raised two healthy children of her own, testified that she saw appellant's baby daughter when she was six months old; Mrs. Reise was of the opinion that the child was not receiving a proper diet. She said the baby did not smile, sit up, make any sounds, or even respond to being held or cuddled. Mrs. Reise never saw a picture of the child in the apartment although she had been shown "snapshot" pictures of appellant and all their pets. During the Christmas season the appellant and his wife hung Christmas stockings for themselves, their dog, cat, bird, and rabbit, but they had no stocking or presents for their baby girl.

Another neighbor, Roylene Babin, who was also an Avon representative, visited appellant's apartment about once every two weeks for about six months, yet never saw or heard the baby, and the door to the baby's room was always closed.

The child died about 10:00 p.m. on July 26, 1973. The police were not called until 4:00 a.m. on July 27th. The police officer who answered the call said the whole apartment had a strong odor of animal and human excrement. Inside the baby's room were two large cages and one contained a

---

1. See *Danelle Harrington v. State,* Tex.Cr.App., 547 S.W.2d 616 (decided this day.)

"fat" black rabbit. Animal excrement was laying about the floor, and what appeared to be human excrement was smeared on the wall behind the crib. The officer stated that all of appellant's pet animals appeared to be healthy and well fed.

Appellant contends that the circumstantial evidence is insufficient to show that a willful act or omission on his part caused the child's death. He says that the evidence does not show that he, acting alone or in concert with his wife, failed to do any act causing the death of his daughter.

It is the duty of *each* parent to support his or her minor children. Family Code, Sec. 4.02 (formerly Article 4614, V.A.C.S.); Article 602, V.A.P.C. (1925). See also, Family Code, Sec. 12.04 and *Ronk v. State*, 544 S.W.2d 123 (Tex.Cr.App.1976). The fact that a father might entrust the care of his child to his wife or some other person does not relieve him of his responsibility to see that his child is properly cared for unless it is shown that some other person had *sole* and *exclusive* care, custody, and control of the minor child. Cf. *Eaglen v. State*, 249 Ind. 144, 231 N.E.2d 147 (1967). The omission or neglect to perform a duty resulting in death, such as of a mother failing to feed her child, may constitute murder where the omission was willful and there was a deliberate intent to cause death. *Martinez v. State*, 498 S.W.2d 938 (Tex.Cr.App.1973); 40 Am.Jur.2d, Homicide, Sec. 89 (1968); Annot. 61 A.L.R.3d 1207 (1975).

The record reflects that appellant was the father of the deceased child. The child resided with appellant and his wife at their apartment. Appellant introduced some business records from a hospital in Pasadena which showed that he was in the hospital for surgery from June 18th to June 30, 1973. However, those same records and the testimony of the physician who performed the surgery show that appellant was not confined to his bed upon release from the hospital. The child died on July 26, 1973. Moreover, Dr. Green testified that the state of malnutrition extended over a prolonged period of time.

The court charged the jury on the law of murder with malice, criminally negligent homicide, circumstantial evidence, the duty of a parent to support his minor children, and the law of principals. In *Floyd v. State*, 494 S.W.2d 828 (Tex.Cr.App.1973) this Court stated:

". . . when a jury, advised of the restrictions which the law places on circumstantial evidence, reaches the conclusion upon evidence properly before them that the accused is guilty, it is not for the reviewing court to supplant their findings by its own unless it is able to point to weaknesses, omissions, or inconsistencies in the evidence which destroy its cogency."

We hold that the evidence is sufficient to show that the appellant caused his daughter's death by his failure to perform his parental duty of support. The evidence is also sufficient for the jury to find that the appellant's failure to perform this duty was willful, intentional, and with malice aforethought. The case of *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App.1976), upon which appellant relies, is distinguishable from the facts of this case. In *Suff* the two month old baby died as a result of a sharp blow to the abdomen with a blunt instrument. This Court affirmed the father's conviction, but reversed the mother's conviction because there was not even "a scintilla of evidence" to show that the mother struck the death blow. In the case at bar the child's death resulted from a continuing course of conduct extending over a prolonged period of time.

Appellant contends that there is no evidence to show that the deceased was Laini *Deanne* Harrington, since Dr. Green testified that he performed an autopsy on Laini Harrington. This argument is wholly without merit. A failure or mistake in proving the middle name of the victim alleged in the indictment may be disregarded and treated as immaterial. The failure to prove or refer to the middle name did not, under these facts, constitute a variance or raise a question of identity. Article 21.07,

V.A.C.C.P.; *Martin v. State,* 541 S.W.2d 605 (Tex.Cr.App.1976); *Stephens v. State,* 433 S.W.2d 428 (Tex.Cr.App.1968); *Davis v. State,* 463 S.W.2d 434 (Tex.Cr.App.1971).

■ Appellant also claims there was no evidence that he imprisoned his daughter from about November 1, 1972, until her death as was alleged in the indictment. If it was necessary to prove this allegation, which appears to be mere surplusage, the allegation is supported by circumstantial evidence. Roylene Babin testified that she visited appellant's apartment on many occasions selling Avon products. She never saw appellant's daughter during any visit. The door to the baby's room was always closed. Another neighbor, Gail Reise, during much of this same time period, only saw the baby once. On all other visits she did not see the baby and the baby's door was always closed. On the apartment door there were two locks in excess of the locks provided by the apartment owners. The appellant had no pictures of his daughter in the apartment and never informed the apartment manager that he had a daughter living with him. Visitors were not accepted at appellant's apartment unless they called beforehand. We find that the evidence is sufficient for the jury to infer the appellant imprisoned his daughter during the time period alleged in the indictment.

■ Appellant contends that the court erred in charging the jury on the law of principals because there was no evidence that he acted in concert with any other person. Appellant's daughter died as a result of starvation occurring over a prolonged period of time. The deceased child resided with appellant and his wife and was under their *joint* care, custody and control. Even if appellant's wife normally took care of the child, it would strain logic to say that he never saw his infant daughter in their two bedroom apartment. Appellant and his wife were seen leaving their apartment with the child; therefore, it is obvious that appellant saw his child and should have observed her starved condition.

To determine whether an accused was acting as a principal, the trial court may look to events before, during and after the commission of the offense. *Bush v. State,* 506 S.W.2d 603 (Tex.Cr.App.1974). While mere presence during the commission of an offense will not make a person a principal, it is a circumstance tending to prove that a person is a principal. *Coronado v. State,* 508 S.W.2d 373 (Tex.Cr.App.1974). "An agreement of partners to act together in a common design can seldom be proven by words, but reliance can often be had on the actions of the parties showing an understanding and common design to do a certain act." *Everett v. State,* 153 Tex.Cr.R. 79, 216 S.W.2d 281 (1949). The facts raised the issue of principals and the court correctly charged the jury; no error is presented.

Appellant contends that the court erred in overruling his objection to the admission in evidence of color photographs which he says are gruesome, do not accurately portray the body of the dead child, had no probative value, and were offered solely to prejudice the jury. The main point of appellant's argument is that the photographs are inaccurate in color so as to accentuate the child's injuries.

Officer Irwin testified that the photographs were true and accurate representations. There is no question from the record that the photographs depict the dead child and the child's bedroom as they appeared on July 27th. Officer Irwin admitted that some of the photographs were not precise in some respects as to color. Appellant introduced the testimony of two witnesses who were experts in color photography. Both experts agreed that several of the photographs were of poor quality in reproducing color. However, the expert witnesses disagreed as to whether the poor quality of the color accentuated the child's injuries. One expert witness stated that in his opinion the photographs did not accentuate the injuries, while the other expert witness was of the opinion that it did accentuate the injuries.

■ If a photograph is competent, material and relevant to the issues on trial, the photograph will not be inadmissible because it is gruesome, unless it is offered

**626**

solely to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible. Only when the probative value of the photograph is very slight and the inflammatory aspects great will it be an abuse of discretion to admit the photographs. *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972); *Page v. State,* 532 S.W.2d 341 (Tex.Cr.App.1976); *Provost v. State,* 514 S.W.2d 269 (Tex.Cr. App.1974).

 The photographs appellant objects to are relevant to the issue on trial. Since the child died as a result of a prolonged period of starvation, the child's physical state and appearance were relevant to the jury's determination of whether the appellant failed to provide his daughter with sufficient food and nourishment. The photographs of the child's physical appearance were also relevant and competent evidence for the jury to consider in determining intent and malice. *Lanham v. State,* 474 S.W.2d 197 (Tex.Cr.App.1971); *Brumbelow v. State,* 364 S.W.2d 232 (Tex.Cr.App.1963).

We agree that the photographs are gruesome; however, we do not agree that the gruesome nature of the photographs outweighs their probative value. Even to the untrained eye, the photographs show that the appellant's daughter was obviously suffering from an extreme degree of malnutrition. They were highly probative of whether the appellant knew that his daughter was malnourished. Therefore, we hold that the inflammatory aspects of the photographs are not such as to outweigh their probative value to the jury. *Brown v. State,* 508 S.W.2d 91 (Tex.Cr.App.1974); *Kalinec v. State,* 500 S.W.2d 146 (Tex.Cr. App.1973); *Pait v. State,* 433 S.W.2d 702 (Tex.Cr.App.1968).

 The admissibility of photographs must rest largely in the discretion of the trial judge. *Phillips v. State,* 511 S.W.2d 22 (Tex.Cr.App.1974); *Rich v. State,* 510 S.W.2d 596 (Tex.Cr.App.1974). Where photographs truly and accurately depict what they purport to depict, a variation or defect in the color reproduction does not necessari-

ly render photographs inadmissible; these variations may be considered by the jury and bear only on the weight of the evidence—not the admissibility. *Cf. Greer v. State,* 523 S.W.2d 687 (Tex.Cr.App.1975); *Lanham v. State,* 474 S.W.2d 197 (Tex.Cr. App.1971). Only if the variation in color is of such a degree that the photograph is no longer a true representation of what the photograph purports to depict will it be an abuse of discretion to admit the photographs in evidence.

 The photographs appellant complains of are in the record. We have reviewed these exhibits as well as the testimony concerning their admissibility. While many of the photographs depict the same objects in varying colors and shades, we do not find that the variations are of such a degree as to render it an abuse of discretion to admit them in evidence.

The judgment is affirmed.

Opinion approved by the Court.