**John GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–93–00294–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 1, 1995.

**726**

Kristine C. Woldy, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before YATES, FOWLER and DRAUGHN *, JJ.

## OPINION

DRAUGHN, Justice.

Appellant entered a plea of not guilty before a jury to the offense of murder. TEX.PENAL CODE ANN. § 19.02 (Vernon 1989).[1] The jury convicted him of voluntary manslaughter. TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). Finding three enhancement paragraphs true, the jury sentenced appellant to fifty years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises sixteen points of error. We affirm the judgment of the trial court.

Appellant went to his mother-in-law's house around noon on May 9, 1991. About 6:00 p.m. that evening, appellant's brother-in-law, Edward Ivy, and another man, Michael Silverstre, came over to the house. Ivy and Silverstre were high on beer and cocaine, and wanted to settle a score with their drug dealers. Appellant agreed to join them be-

---

* The Honorable Joe L. Draughn sitting by assignment.

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

cause he had known Ivy and Silverstre for a long time and thought he could straighten things out with the drug dealers because of his connections. Silverstre drove, Ivy rode in the front passenger seat, and appellant rode in the back of the car.

While they were driving, Silverstre told appellant that he wanted to rob and kill the drug dealers. When appellant told Silverstre that he did not want to do that, they began arguing. Silverstre pulled off the freeway and put the car in park at the intersection of IH 10 and Lockwood. Silverstre got out, walked to the back of the car, and slapped appellant across the face. Appellant then got out of the car, and more words were exchanged. Appellant looked down and saw a pistol on the front seat. Appellant contends that once he saw the gun, he thought Silverstre was going to shoot him because Silverstre was already planning to kill the drug dealers. Therefore, before Silverstre could reach for the gun, appellant grabbed the pistol and shot Silverstre twice in the heart. Silverstre's body fell onto the freeway embankment. As Ivy fled in the car, appellant ran across the freeway overpass to a Texaco station, where he threw the pistol behind a pay phone.

Appellant then ran into a neighborhood where he told Karl Dever that his friend had been shot when they were robbed on the freeway. Appellant used Dever's phone to call his wife. While appellant was on the phone, Houston Police Officer Miller arrived. Because Officer Miller thought appellant was a witness to the murder, he drove appellant back to the crime scene in his patrol car. After talking to other witnesses, the police determined that appellant had shot Silverstre and arrested appellant. After appellant received his *Miranda* warnings, appellant confessed to killing Silverstre, but claimed he acted in self-defense.

██ In his first six points of error, appellant contends the trial court erred in admitting the autopsy report and in permitting a substitute medical examiner to testify about matters observed during the autopsy performed by a different medical examiner. Appellant relies on *Cole v. State*, 839 S.W.2d 798 (Tex.Crim.App.1990), which prohibits "other law enforcement" personnel from testifying under the hearsay exception for public records. Medical examiners, however, are not "other law enforcement" personnel for purposes of TEX.R.CRIM.EVID. 803(8)(B). *Garcia v. State*, 868 S.W.2d 337 (Tex.Crim.App.1993). A substitute medical examiner may testify about matters observed during an autopsy performed by another medical examiner. *Id.* We overrule appellant's first four points of error concerning the admission of the autopsy.

The Court of Criminal Appeals, however, has indicated in dicta that some chemical analyses performed by a "Forensic Science Center" are not admissible under TEX. R.CRIM.EVID. 803(8)(B). *Aguilar v. State*, 887 S.W.2d 27, 29 (Tex.Crim.App.1994). The Court of Criminal Appeals stated that evidence might not be admissible because, "it appears that only part of BCFSC's (Bexar County Forensic Science Center) work is done for the Medical Examiner's office." *Id.*

██ In points of error five and six, appellant contends that the blood alcohol test and atomic absorption test were not admissible under the *Garcia* exception. Appellant contends the blood alcohol test was not admissible because the State used it only to disprove appellant's claims that the deceased was violent and aggressive because he was drunk. Appellant contends that because it was apparent that the deceased died as a result of a gunshot wound, the blood alcohol test was not admissible because it did not determine the cause of death. Even if the blood alcohol test was used for more than one purpose by the State, it was admissible under *Garcia*. The blood alcohol test was a normal part of the process of performing an autopsy and therefore was admissible under *Garcia*. Because the blood alcohol test was clearly conducted as part of the routine work of the medical examiner, we overrule appellant's fifth point of error.

██ The atomic absorption test, however, raises a more difficult issue because this test was performed on appellant, not on the deceased. This test checked for residue on appellant's hand to determine if he fired a gun. Appellant contends the atomic absorp-

tion test was simply police investigation performed by the medical examiner's office and did not relate to the medical examiner's function of determining the cause of death. TEX. CODE CRIM.PROC.ANN. art. 49.25, § 9 (Vernon 1979). The atomic absorption test was performed by the Medical Examiner's office and assisted in determining the cause of death was by a gunshot. Therefore, we conclude it would be admissible under *Garcia.* TEX. CODE CRIM.PROC.ANN. art. 49.25, § 9 (Vernon 1979).

■ The Court of Criminal Appeals has not resolved this issue, we perform a harm analysis to show that even if the test should not have been admitted under *Garcia,* appellant suffered no harm because of its admission. Errors in improperly admitting evidence are subject to a harm analysis under TEX.R.APP.P. 81(b)(2). *Cole,* 839 S.W.2d at 806. In doing this harm analysis, we consider the factors set out in *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989). These factors are (1) the source of the error; (2) the nature of the error; (3) whether or to what extent the error was emphasized by the State; (4) the error's probable implications; (5) how much weight a juror would probably place upon the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.*

■ We initially note that appellant readily admitted that he fired the gun; he only claims he acted in self-defense. Therefore, in applying *Harris,* the allegedly improperly admitted evidence will be harmful only if it disproves the theory of self-defense. In analyzing the source of the error and nature of the error, we must determine whether the State intended to taint the trial by offering inadmissible evidence. *Higginbotham v. State,* 807 S.W.2d 732, 735 (Tex.Crim.App. 1991). At the time of the trial, the law in this area was not clear and the State believed it was following the prevailing case law. Therefore, the State did not intend to taint the proceedings by introducing improper evidence.

Next, we must determine if the State emphasized the atomic absorption test. The State never mentioned the atomic absorption test again after its introduction. The State never discussed this test in its closing argument and did not explain the test to the jury. Instead the State focused on other problems with appellant's claim of self-defense including the distance between the shooter and the victim and his claim that the deceased had been killed by robbers. We find that the State did not emphasize the atomic absorption test because the prosecutor did not mention it in her closing argument.

In considering the collateral implications of the error, we must determine whether the error disparaged the sole defense of appellant. At oral argument, appellant's counsel argued that the State used the atomic absorption test to prove that there had not been a struggle over the gun to defeat appellant's claim of self-defense. We do not find this argument in the record. The State used the atomic absorption only to show that appellant fired the gun, not to defeat appellant's claim of self-defense. The collateral implications do not support finding the error harmful.

Next we consider the weight the jurors would give to the atomic absorption test. The State's case was so strong that the prosecutor did not mention this test during her closing argument. Instead, the State focused on appellant's admission that he fired the gun. The atomic absorption test only proved a fact that appellant readily admitted. The effect on the jury deliberations was at most minimal.

Finally, our decision will not result in prosecutors repeating this process with impunity as appellant contends. The State did not need to admit the atomic absorption test because appellant admitted he fired the gun. The State gained so little from this test, it is not likely to rely on it in the future. There is no danger of further abuse. Because the atomic absorption test was admissible under *Garcia* and any error in admitting that test was harmless, we overrule appellant's sixth point of error.

In his seventh point of error, appellant challenges the sufficiency of the evidence contending the State did not prove Silverstre's death without the medical examiner's testimony. We overrule appellant's seventh

point of error because the autopsy performed by the substitute medical examiner was admissible and was sufficient evidence to prove Silverstre's death.

■ In points of error eight through twelve, appellant contends that the trial court erred in admitting repetitious photographs. In point of error number eight, appellant contends the trial court erred in admitting State's Exhibit # 5, a graphic photograph of the lower portion of the deceased's body, when State's Exhibit # 3, a graphic photograph of the upper portion of the deceased's body, had already been admitted. The State could present both of these photos because they were independently relevant. These photographs show different portions of the deceased's body: one shows the face and upper chest, while the other shows the stomach and lower chest. The photographs were not so terribly gruesome as to be excluded because of the danger they would inflame the jury. *Fuller v. State*, 829 S.W.2d 191, 206–207 (Tex.Crim.App.1992). Because State's Exhibit # 3 and State's Exhibit # 5 were relevant and admissible, we overrule appellant's eighth point of error.

■ In points of error nine through eleven, appellant contends the trial court erred in admitting five photos showing the deceased's body lying on the freeway embankment covered by a sheet. These photographs differed only in the viewpoint from which they were taken. Because these photographs show the deceased body covered by a sheet, they were not so terribly gruesome as to incite the jury. *Fuller*, 829 S.W.2d at 206. The trial judge also did not err in allowing the State to introduce them even though there is repetition. A decision on the admissibility of a photograph is within the discretion of the trial court. *Brasfield v. State*, 600 S.W.2d 288, 297 (Tex.Crim.App. 1980). If a verbal description of the scene would have been admissible, a photograph depicting the same is admissible. *Harrington v. State*, 547 S.W.2d 621, 625–26 (Tex. Crim.App.1977). Only when the probative value of the photograph is very slight and the inflammatory aspects very high will the trial judge commit abuse of discretion. *Id.* The probative value of these photographs was not

substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay or presentation of cumulative evidence. TEX.R.CRIM.EVID. 403. These photographs showed the body of the deceased lying on the freeway embankment, a fact essential to the State's murder case. The trial court did not abuse its discretion in admitting these photographs. We overrule points of error nine through eleven.

■ In point of error twelve, appellant contends the trial court erred by admitting a videotape of the scene in addition to the photographs. We initially note that the videotape was not part of the record and is therefore, not before us. Appellant has waived any error in this regard by failing to present a complete record. TEX.R.APP.P. 50(d).

Additionally we disagree with appellant's argument that the videotape was unnecessarily cumulative and therefore warrants a reversal. *Harrington*, 547 S.W.2d at 625–26. Only when the probative value is very slight and the inflammatory aspects very high will a trial court abuse its discretion. *Id.* Juries frequently hear the same evidence from more than one witness. Similarly, a videotape and a photograph present the same evidence to the jury simply in a different form. The videotape showed the crime scene and was relevant evidence. It simply repeated earlier evidence. We find that the trial court did not abuse its discretion in admitting the videotape. We overrule appellant's twelfth point of error.

In his thirteenth and fourteenth points of error, appellant contends the trial court erred in admitting three statements appellant made to Houston Police Officers Miller and Aldrete. First, he contends a statement given to Officer Miller was inadmissible because it was the product of a custodial interrogation conducted before appellant had been given his *Miranda* warnings. Houston Police Officer Miller found appellant at Dever's home shortly after the crime. It is undisputed that Officer Miller took appellant back to the crime scene in his patrol car and that prior to receiving his *Miranda* warnings, appellant told Officer Miller that Silverstre had

been shot when they were robbed at the intersection. Appellant contends, however, this statement was the product of custodial interrogation because he was handcuffed when he made the statement. Dever testified that appellant was put in handcuffs by Officer Miller at Dever's house. Officer Miller testified that he did not put appellant in handcuffs at Dever's house, but gave appellant a ride in the patrol car solely to bring the main witness to the alleged robbery back to the scene.

■ The trial judge held a suppression hearing in which he heard the testimony of both Dever and Officer Miller. The trial judge accepted Officer Miller's statement that appellant was not handcuffed when the officer drove appellant back to the crime scene. The trial judge was the trier of fact to determine these issues. *Sawyers v. State,* 724 S.W.2d 24, 35 (Tex.Crim.App.1986). We do not see a reason to disturb the trial judge's ruling. Because appellant was not in custody at the time he told Officer Miller he had been robbed and that Silverstre had been killed by the robbers, this statement was admissible.

■ Appellant next contends a statement given to Sergeant Aldrete after appellant received his *Miranda* warnings was inadmissible because it was custodial interrogation that was not recorded or corroborated. Tex.Code Crim.Proc.Ann. art. 38.22, § 3(a), (c). After appellant had been given his *Miranda* warnings, Aldrete asked appellant if he would tell him what happened. Appellant responded by telling Aldrete that Silverstre had been shot during a robbery. Although appellant was detained at the time, appellant's statement was not the product of custodial interrogation because Aldrete did not ask a question that he thought would produce incriminating testimony. *McCambridge v. State,* 712 S.W.2d 499, 505 (Tex. Crim.App.1986) (holding that questioning which occurs as a normal incident of arrest and custody is not interrogation). When Aldrete asked appellant what happened he did not expect appellant to incriminate himself but only repeat the story about the robbery. Further, any error in admitting this testimony was not harmful because it did not impli-

cate defendant as the person who killed Silverstre. Also, any issue concerning appellant's veracity raised by this untrue statement was already in evidence from the testimony of Officer Miller and Mr. Dever. The statement to Sergeant Aldrete was admissible.

■ Appellant also contends that permitting Sergeant Aldrete to testify concerning the discovery of the gun behind the Texaco station allowed inadmissible testimony to be admitted by implication. Appellant contends Aldrete knew the location of the gun only because appellant told the officer where he threw the gun and that appellant's statement about the location of the gun was inadmissible hearsay. Appellant, however, waived any error concerning Sergeant Aldrete's statement because appellant himself questioned Aldrete about finding the gun at the Texaco. Appellant raised the issue of the location of the gun and Aldrete was simply responding to appellant's questioning. Appellant cannot complain about error he created by his own line of questioning. Because the trial court did not err in admitting these three statements, we overrule appellant's thirteenth and fourteenth points of error.

■ In his fifteenth point of error, appellant contends the trial court erred by failing to submit an instruction on the right to strike first. Appellant relies on two Texas Court of Criminal Appeals cases from the turn of the century. *Culp v. State,* 58 Tex. Crim. 74, 124 S.W. 946 (1910); *Ennis v. State,* 38 S.W. 998 (Tex.Crim.App.1897). Appellant's requested charge on the right to strike first was not necessary because the self-defense charge given by the trial court adequately preserved his rights in that regard. *Villalobos v. State,* 756 S.W.2d 847, 851 (Tex.App.—Corpus Christi 1988, no pet.). The portion of the charge relating to appellant's reasonable belief that deadly force was immediately necessary to protect himself encompassed the right to strike first. *Id.* When the charge refused is akin to or is adequately covered by the charge given by the trial court, appellant is not harmed. *Sheppard v. State,* 545 S.W.2d 816, 819 (Tex. Crim.App.1977). The trial court did not err

in failing to submit appellant's charge on his right to strike first. We overrule appellant's fifteenth point of error.

 In his sixteenth point of error, appellant contends the trial court erred in denying appellant's request for an instruction on the burden of proof and a definition of reasonable doubt during the punishment phase of the trial. The State does not have to prove the appropriate sentence beyond a reasonable doubt. *Urbano v. State*, 808 S.W.2d 519, 523 (Tex.App.—Houston [14th Dist.] 1991, no pet.). The trial court properly overruled appellant's request for an improper instruction. We overrule appellant's sixteenth point of error.

We affirm the judgment of the trial court.