

# NUMBER 13-07-00288-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**FRANCIS WILSON,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 319th District Court of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, Francis Wilson, appeals his murder conviction. *See* TEX. PENAL CODE

ANN. § 19.02 (Vernon 2003). The trial court sentenced appellant to life imprisonment. *See*

*id.* § 12.32 (Vernon 2003). Appellant raises three issues on appeal: (1) the trial court

abused its discretion in admitting prejudicial photographs; (2) the trial court abused its

discretion in admitting a witness's recorded recollections; and (3) the evidence is insufficient to support the verdict. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 7, 1998, James Garrett and Bill Livingston, patrolmen with the Corpus Christi Police Department at the time, were "working Weed and Seed" patrol.[1] At approximately 11:30 p.m., they observed "a black male standing outside of a station wagon, screaming at a white male who was seated behind the wheel of a station wagon" about three hundred yards from the Ranch Motel. The officers separated the two individuals and learned that Wilson was the black male and that William Gray was the white male. Gray was upset because Beverly De Los Santos, his girlfriend, had taken money from room 115, their hotel room at the Ranch Motel, to buy alcohol for Wilson.

While the officers had the two men separated, Wilson and Gray continued periodically screaming at each other, and when Garrett told Gray to leave, Gray said to Wilson that "he would settle it later without the police." After breaking up the fight, Garrett and Livingston continued to patrol the area and would periodically see appellant or De Los Santos until the officers' shift ended at approximately 1:30 a.m. on June 8, 1998.

On June 8, 1998, Sulma Bhakta, a maid at her parents' motel, the Ranch Motel, noticed that the carport assigned to room 115 was empty. Using her master key, she entered room 115, which was registered to Gray, and found his body lying underneath a refrigerator that was face-down on top of him. The room was also "in a bit of a disarray." She called 911 and waited for the police to arrive.

---

[1] "Weed and Seed" is a law enforcement collaboration between state, local, and federal governments. *See* "Weed & Seed," *available at* http://www.ojp.usdoj. gov/ccdo/ws/welcome.html (last visited Apr. 8, 2009).

On June 8, 1998, Frank Perez, then a patrolman with the Corpus Christi Police Department, arrived at the Ranch Motel and was directed to room 115 by Prehlad "Phillip" Bhakta, the motel's owner. Perez went to room 115 where he found the door ajar, and, upon entering the room, he noticed that there "appeared to have been a scuffle" because "[i]t was ransacked." Perez confirmed that Gray was dead.

On June 8, 1998, at about 10:50 a.m., Sergeant Ron Zirbes was dispatched to the Ranch Motel. He checked Gray's vital signs and determined that Gray was dead. Zirbes spoke with Dora Vela, a passerby who had seen two men fighting in room 115. Zirbes also contacted Phillip Bhakta, who confirmed that both Gray and Beverly De Los Santos were staying in room 115.

Vela testified that, while walking between the Ranch Motel and the La Siesta Motel, she heard what sounded like a fight. She went around the Ranch Motel and saw "a black guy" and a white "guy with a beard" fighting in room 115. Vela stated that the "black guy" was hitting the "white guy," sometimes even while the "white guy" was on the floor, and he kept on hitting the "white guy" even after she told him to stop. Vela then ran to Phillip Bhakta and told him to call the police because of the fight. When she finished speaking to Phillip Bhakta, Vela saw the man later identified as Wilson walking away from the Ranch Motel. She was unable to get back into room 115 because the door locked automatically when it was closed. Vela signed a written statement to the police stating what she had seen and heard at the scene. Vela also identified appellant in a photo lineup as the "black guy" she saw fighting with the "white guy" in room 115.

John Thomas Hornsby, the supervisor of the forensics department of the Corpus Christi Police Department, testified concerning blood splatters and other topics. Hornsby

3

noted that, based on his blood-splatter analysis, some of the blood stains in room 115 occurred while Gray was in a kneeling or "slouched over" posture. Hornsby also demonstrated how the refrigerator was placed on top of Gray, based on a fingerprint on the right edge of the freezer door and a blood stain on the right side of the refrigerator. Hornsby agreed that the blood splatters in room 115 were consistent with "some sort of blunt force trauma" applied to Gray.

Ray Fernandez, M.D., a medical examiner in Nueces County, Texas, testified regarding the cause of Gray's death. He stated that Gray died from "cardiac dysrhythmia" due to blunt trauma to the head and "asphyxia component-type death" due to the refrigerator being placed on top of Gray.

Yezenia Banuelos, a crime scene technician with the Corpus Christi Police Department, testified that she was dispatched to room 115 at the Ranch Motel. Upon entering the room, she noticed that Gray's body was still lying underneath the refrigerator. After photographing the scene, Banuelos processed the area for fingerprints. She also collected an empty soda can on a table near the entrance to room 115.

Katrina Aggelopoulos, a latent fingerprint examiner with the Corpus Christi Police Department, evaluated the prints taken from room 115. There were forty-nine fingerprint cards taken from room 115, and twenty-seven were not suitable for comparison purposes. Of the forty-nine cards, she was able to match eleven prints to individuals. One of Wilson's fingerprints was found on "the right edge of the freezer door" of the refrigerator found on top of Gray. Additionally, Aggelopoulos found another print belonging to Wilson on the soda can. There were eleven prints she was not able to match to individuals, which could have belonged to as many as eleven different people.

4

On June 11, 1998, Wilson was indicted and charged with murder. He was reindicted on October 6, 2006, for murder and on March 29, 2007, for murder and as a habitual felony offender. *See id.*; *id.* § 12.42 (Vernon Supp. 2008). On April 18, 2007, the jury found appellant guilty, and he was sentenced by the trial court to life imprisonment. This appeal ensued.

## II. PHOTOGRAPHS

In his first issue on appeal, Wilson argues that the trial court abused its discretion when it admitted into evidence State's Exhibit 26, a post-mortem photograph of Gray. The photograph showed Gray's bloodied face, his broken dentures, and a piece of his beard that was not attached to his face. Wilson asserts that the photograph's probative value is outweighed by its prejudicial effects. *See* TEX. R. EVID. 403; *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006) (noting that Texas Rule of Evidence 403 provides that relevant evidence is admissible unless its probative value is outweighed by the danger of unfair prejudice).

### A. Standard of Review

"The admissibility of a photograph is within the sound discretion of the trial judge." *Shuffield*, 189 S.W.3d at 786. Therefore, following an abuse of discretion standard, we should "do more than decide whether the trial judge did in fact conduct the required balancing between probative and prejudicial values; the trial court's determination must be reasonable in view of all relevant facts." *Id.* at 787 (internal quotations omitted).

### B. Applicable Law

Rule of evidence 403 provides that relevant evidence, which is usually admissible, may be made inadmissible when its probative value is substantially outweighed by the

danger of unfair prejudice. TEX. R. EVID. 403. The rule 403 balancing test requires the evaluation of the following non-exclusive factors: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Shuffield*, 189 S.W.3d at 787 (citing *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g)). Specifically in the context of photographic evidence, these elements have been encapsulated into the following considerations:

> the number of photographs, the size of the photograph, whether it is in color or black and white, the detail shown in the photograph, whether the photograph is gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment

*Id.*; *see Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). "Generally, photographs are admissible if verbal testimony about the matters depicted in the photographs would be admissible and their probative value is not substantially outweighed by any of the Rule 403 counter-factors." *Threadgill v. State*, 146 S.W.3d 654, 671 (Tex. Crim. App. 2004).

## C.    Discussion

First, the State argues that Wilson failed to preserve his rule 403 objection because his "complaint on appeal does not comport with his objection to the trial court" and because he did not object to the same evidence when it was offered through other sources. *See* TEX. R. APP. P. 33.1(a)(1); *Moore v. State*, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999). "[A] specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it." *Neal v. State*, 150 S.W.3d 169, 178 (Tex. Crim.

6

App. 2004) (quoting *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)).

> [A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). Here, when State's Exhibit 26 was offered, Wilson's counsel objected, stating, "Your honor, we object to Number 26, as it's highly inflammatory. Its evidentiary value is outweighed by the depiction of the scene." We believe that the objection has the requisite specificity to "inform the trial judge of the basis of the objection and afford him the opportunity to rule on it." *Neal*, 150 S.W.3d at 178.

Additionally, we do not believe that the same evidence as that contained in State's Exhibit 26 was admitted elsewhere without objection. Prior to the admission of State's Exhibit 26, without objection by Wilson, a witness gave a general description of what the photograph depicts. *See Threadgill,* 146 S.W.3d at 671. Subsequent to the admission of State's Exhibit 26, three more photos were admitted showing some of the same injuries depicted in State's Exhibit 26. However, those three photos do not provide the same view of Gray, nor do they depict his injuries in the same manner as State's Exhibit 26. Thus, the same evidence was not admitted without objection. *See Massey v. State*, 933 S.W.2d 141, 150 (Tex. Crim. App. 1996) (noting that the same evidence was admitted without objection when the defendant objected to the admission of one record containing an allegedly improperly obtained journal, but did not object to the admission of the journal itself). Accordingly, we hold that Wilson preserved this issue for appeal.

Wilson contends that the trial court erred in admitting State's Exhibit 26 because

its probative value was outweighed by the potential for the picture to unfairly prejudice the jurors. State's Exhibit 26 depicts Gray's bloodied face, his dentures (which had fallen out of his mouth), and a piece of his beard that had been detached from his face. This approximately 3.5-inch by 5-inch color photograph was one of three frontal pictures of Gray's face admitted into evidence. *See Shuffield*, 189 S.W.3d at 787. It was the only picture showing a complete view of Gray's face, and Gray was fully clothed. *See id.* Because Exhibit 26 showed was the most comprehensive picture of Gray's blunt-trauma injuries, its probative value was high. *See id.* at 788. Even though it is probative, the picture is gruesome, meaning that it is "disagreeable to look at;" however, "it depict[s] nothing more than the reality of the brutal crime committed." *Sonnier*, 913 S.W.2d at 519. "A trial court does not err merely because it admits into evidence photographs which are gruesome." *Id.*; *see Harrington v. State*, 547 S.W.2d 621, 625-26 (Tex. Cr. App. 1977). We overrule Wilson's first issue and hold that the trial court did not err in admitting State's Exhibit 26.

## II. RECORDED RECOLLECTIONS

In his second and third issues, Wilson asserts that the trial court erred in allowing a witness's recorded statement to be read to the jury and in admitting a photo lineup. The trial court ruled that both were admissible, and Wilson argues that neither was admissible under Texas Rule of Evidence 803(5), the past recollection recorded exception to the hearsay rule. *See* TEX. R. EVID. 803(5). We hold that the trial court did not abuse its discretion.

### A. Standard of Review

"The admissibility of hearsay under the past recollection recorded exception remains

8

within the sound discretion of the trial court, and the trial court's ruling will not be disturbed absent an abuse of that discretion." *Phea v. State*, 767 S.W.2d 263, 267 (Tex. App.–Amarillo 1989, writ ref'd). We will reverse the trial court's decision to admit evidence under an exception to the hearsay rule only when there has been a clear abuse of discretion: "'when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

## B.     Applicable Law

Rule of evidence 803(5) provides that

[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

5) Recorded Recollection. A memorandum or record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' [sic] memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the document's trustworthiness. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Tᴇx. R. Evɪᴅ. 803(5). To satisfy the exception, four elements must be met:

(1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum.

*Johnson v. State*, 967 S.W.2d 410, 416 (Tex. Crim. App. 1998).

9

## C.     Discussion

### 1.     *Witness Statement*

Wilson, in his second issue, challenges the trial court's decision to allow a statement given by Vela, a witness, to be read to the jury.  Vela gave the statement to Ray Rivera, Jr., who at the time of the investigation, was a police officer with the homicide department of the Corpus Christi Police Department.  Rivera took the statement on June 8, 1998, and in it, Vela detailed the fight she saw occurring in room 115 of the Ranch Motel.

The State argues that Wilson waived this complaint either because his "complaint on appeal does not comport with his objection to the trial court," or because Wilson failed to object when the same evidence was admitted elsewhere.  *See* TEX. R. APP. P. 33.1(a)(1)*; Moore*, 999 S.W.2d at 402.  We disagree with the State because Wilson properly preserved his second issue for our review.

Properly characterized, Wilson's argument is that the State failed to demonstrate that (1) Vela had firsthand knowledge of the event, and (2) Vela recorded her statement while "she had a clear and accurate memory of the event."  During the trial, Wilson objected to the admissibility of the statement, claiming that it was unreliable and arguing that the State did not prove that (1) Vela lacked "some degree of present memory concerning the event," (2) Vela did not remember whether she made or adopted the statement, (3) the recorded recollection accurately reflected Vela's prior knowledge, and (4) that the recollection was recorded while it was "fresh in the mind."  Wilson's objections informed the trial court that his objection was that the State failed to prove that Vela's statement satisfied the requisites of rule 803(5).  Wilson's objection was specific enough

10

to "inform the trial judge of the basis of the objection and afford him the opportunity to rule on it." *Neal*, 150 S.W.3d at 178. Wilson's complaint on appeal "comports with" his objection to the trial court because he argues on appeal what he argued to the trial court regarding Vela's statement: the State failed to satisfy rule 803(5).

Additionally, the same evidence was not admitted, in its entirety, without objection. Vela's statement contains significantly more evidence than the examples in the record to which the State directs this Court. For example, Vela's statement is the only evidence that she was between the Ranch Motel and the La Siesta Motel when she heard a noise that sounded like a fight. Nor do we learn elsewhere that, to Vela, "[t]he black guy looked like he was maybe 30." Only in Vela's statement does the record indicate that Vela saw the "black guy . . . hitting [Gray] with his hands," and that she "told the black guy to stop." We hold that appellant did not waive this issue; therefore, we will address the merits of appellant's second argument.

During Vela's testimony, she stated that it was "hard for her to remember now" what happened in 1998 that caused her to be a witness in the case. Vela has a "hard time with remembering stuff." Vela gave a statement to the police on the day the events occurred, and that statement would have been true and correct when she gave it. Vela signed the statement, and she would not have signed it if it had not been true and correct. She would not have lied at the time she gave the statement. She also testified that her lack of present memory may have occurred because she "was very, very strung out" back then, and "[t]here's a lot of things that [she does not] remember back then." We hold that the State proved the necessary predicate to satisfy the recorded recollection exception to the

hearsay rule, and the trial judge's decision to admit this recorded recollection "was [not] so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Zuliani*, 97 S.W.3d at 595.  We overrule appellant's second issue.

2.  *Photo Lineup*

In his third issue, Wilson challenges the trial court's decision to admit State's Exhibit 4, a photo lineup in which Vela had previously identified appellant as the "black guy" she saw fighting with Gray in room 115.  When the photo lineup was offered, Wilson's objection was that the proper predicate had not been laid for its admissibility.  The State argues that this "general objection failed to preserve any error."  We agree.

"Objecting on the basis that no predicate has been laid is a general objection that lacks the specificity necessary to advise the trial court of the basis for the objection.  Such an objection fails to preserve the issue for review."  *Young v. State*, 183 S.W.3d 699, 704 (Tex. App.–Tyler 2005, pet. ref'd) (citing *Smith v. State*, 683 S.W.2d 393, 403-04 (Tex. Crim. App. 1984)).  Because Wilson made a general objection that the proper predicate was not laid, he failed to inform the trial court what the predicate is and exactly how the predicate was deficient; therefore, he failed to preserve this issue for appeal.  *Id.* (citing *Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985)).  We overrule appellant's third issue.

### III.  SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Wilson challenges the trial court's denial of his motion for instructed verdict arguing that the evidence "is insufficient to sustain the conviction."

## A.    Standard of Review

"A challenge to the denial of a motion for directed verdict is actually a challenge to the legal sufficiency of the evidence." *Lemoine v. State*, 85 S.W.3d 385, 387 (Tex. App.–Corpus Christi 2002, pet. denied) (citing *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990)).  Therefore, "we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)).  We review all of the evidence, whether properly or improperly admitted, and treat direct and circumstantial evidence equally.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  If the record gives rise to conflicting inferences, we presume that, in the present case, the jury resolved any conflicts in favor of the State, and we defer to their determination.  *Id.*

## B.    Applicable Law

Under the penal code, a person commits the offense of murder if he "(1) intentionally or knowingly causes the death of an individual;" or "(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."  TEX. PENAL CODE ANN. § 19.02(b).  A person is a habitual felony offender "[i]f it is shown on the trial of a first-degree felony that the defendant has been once before convicted of a felony . . . ." *Id.* § 12.42(c)(1); *see id.* § 19.02(c) (noting that an offense under section 19.02 is a first-degree felony).

## C.    Discussion

Wilson argues that the evidence is insufficient because, at the most, it merely

13

demonstrates that he may have been present at the scene. *Segura v. State*, 850 S.W.2d 681, 684 (Tex. App.–Corpus Christi 1993, writ ref'd) ("Mere presence at the scene of the offense is insufficient evidence of intentional participation in the offense."). The evidence indicates more than Wilson's mere presence at the scene.

Vela testified that she saw a black man and a white man fighting in room 115 at the Ranch Motel, that the black man was hitting the white man with his hands, and that she told him to stop. On June 8 or 9, 1998, Vela picked Wilson out of a photo lineup as the black man she saw fighting with Gray.

Aggelopoulos testified that appellant's fingerprints were on a soda can found in room 115 and noted that appellant's fingerprint was "obtained from the top edge of the freezer door" of the refrigerator found on top of Gray. Garrett was able to pick Gray out of a photo lineup as the man he spoke with earlier that night. Livingston identified appellant as the man he had spoken with the night before Gray's death and also stated that the soda can, upon which appellant's fingerprints were found, had been modified to be used as a crack pipe. Dr. Fernandez testified that the manner of death was homicide involving serious bodily injury and a deadly weapon—the refrigerator. Hornsby noted that, based on the position of a blood swipe—"where blood is on an existing object and it is transferred by that object coming in contact with another object"—and the fingerprint on the top of the freezer door, Gray could not have pulled the refrigerator down on himself, indicating that another person must have placed the refrigerator on top of Gray.

The trial court admitted records of Wilson's prior convictions. In October 1975, in South Carolina, Wilson was sentenced to six years of "jail time" for "aggravated assault and

14

battery." *See generally State v. Fennell*, 531 S.E.2d 512, 516-17 (S.C. 2000) (noting that "assault and battery of a high and aggravated nature" is a misdemeanor). In December 2000, in Florida, Wilson pleaded "guilty" to a charge of "DUI Manslaughter," a second-degree felony. *See* FLA. STAT. ANN. § 316.193(3) (West 2009).

Viewing all of the evidence in the light most favorable to the verdict, we hold that "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *See Lemoine*, 85 S.W.3d at 387 (citing *Jackson*, 443 U.S. at 318); *see also* TEX. PENAL CODE ANN. § 19.02(b) (setting out the elements of the offense of murder); Tex. Penal Code Ann. § 12.42(c)(1) (listing the elements of habitual felony offender). Therefore, we conclude that the evidence is legally sufficient to support the verdict, and we overrule appellant's fourth issue.

## IV. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
See TEX. R. APP. P. 47.2(b)

Memorandum Opinion delivered and
filed this the 30th day of April, 2009.

15