COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-289-CR

 

 

MARSHALL L. LAJOIE                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

       FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

In two points, Appellant
Marshall L. Lajoie appeals the trial court=s refusal to suppress portions of his DWI video.  

II. Factual and Procedural
Background

This is the case of the quick
invocation of counsel.  








While on patrol around
midnight on December 27, 2005, North Richland Hills Officer Mike Nelson
observed Lajoie=s SUV
traveling on Highway 26.  Lajoie=s SUV appeared to have no license plate light.  While following the SUV, Officer Nelson
turned his headlights off and on and confirmed that the license plate had no
light.

Officer Nelson then attempted
to initiate a traffic stop by turning on his overhead lights; however, Lajoie
continued driving and passed through two intersections.  Officer Nelson then sounded his siren, and
Lajoie pulled into a gas station parking lot.

After approaching Lajoie in
his SUV, Officer Nelson detected the smell of alcohol on Lajoie=s breath and noticed him to have slow and slurred speech. Officer
Nelson notified Lajoie of the reason he had pulled him over and proceeded to
ask him for his driver=s license
and insurance and also asked him where he had been.  Lajoie claimed that he could not understand
the question and inquired whether he was under arrest.  Officer Nelson informed Lajoie that he was
being detained on a traffic violation. 
Officer Nelson asked Lajoie whether he had been drinking.  Lajoie replied that he did not care to
respond because he believed his attorney would tell him not to answer any
questions.








Shortly thereafter, Lajoie
exited his SUV to make his own inspection of the absence of his license plate
light.  Officer Nelson proceeded to
conduct field sobriety tests on Lajoie. 
After completing the horizontal gaze nystagmus test, Lajoie declined to participate
in any further field sobriety tests, twice stating that he wished to contact
his attorney.  Officer Nelson informed
Lajoie that Ais not an
option right now.@  Officer Nelson then placed Lajoie under
arrest.  The entire traffic stop and
arrest was caught on Officer Nelson=s in-car camera.            Officer Nelson then transported Lajoie to
jail where he was also videotaped.  While
Lajoie was inside the intoxilyzer room, Officer Nelson read Lajoie the
statutory warning and requested a breath specimen.  Lajoie again responded that he wanted to wait
until he could consult with his lawyer. 
After Lajoie refused the breath test, Officer Nelson read him his Miranda rights.
When Officer Nelson asked Lajoie whether he wanted to give up those rights and
to talk to him, Lajoie said Ano@ and the
interview was terminated.

A jury convicted Lajoie of
driving while intoxicated.  The trial
court sentenced him to two years= community supervision and a fine in accordance with the jury=s assessment.  This appeal
followed.  

III. Preservation of Error

In his first point, Lajoie asserts that the trial court=s refusal to
suppress the portions of the video in which he requests and mentions an
attorney was error. The State first responds
that Lajoie=s first
point has not been preserved for our review. 
We disagree.  








A. Applicable Law  

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526 U.S. 1070
(1999).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to
rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).

B. Application 

1. Pretrial Motions to
Suppress 

The State first argues that
Lajoie failed to preserve error because he did not get a ruling on his pretrial
motions to suppress.  We agree that
Lajoie did not get rulings on his motions. 
However, even the failure to file a pretrial motion does not waive a
complaint of improperly obtained evidence. 
Johnson v. State, 743 S.W.2d 307, 309 (Tex. App.CSan Antonio 1987, pet. ref=d).  Thus, Lajoie could still
preserve error without getting a ruling on his pretrial motions.

 








2. Failure to Object
Each Time Evidence Offered   

The State next asserts that
Lajoie failed to preserve error because he did not object each and every time
the objectionable evidence was introduced. 
As stated above, the portions of the DWI video that Lajoie felt were
objectionable were the instances when he requested or mentioned an attorney.  However, before the DWI video was published
to the jury, the State called Officer Nelson to testify.  After it was established that Officer Nelson
had pulled Lajoie over for a traffic violation, Officer Nelson testified as
follows:  

Q.
[State] What did you observe about the Defendant? 

 

A. I
observed that his speech was slurred and I smelled the odor of alcoholic
beverage on his breath.

 

Q.
Did you ask the Defendant for any identifying information?

 

A.
Yes, ma=am.

 

Q.
What did he give you?

 

A. He
gave me his driver=s
license and his insurance card, which I requested.

 

Q.
Did you ask him any other questions?

 

A.
Yes ma=am.  I asked him where he was coming from.

 

Q.
And what did he say?

 

A. He
appeared that he didn=t
understand the question.  I repeated the
question.  And I believe he said he
wanted -- or asked -- he asked if he was under arrest at that point.








Q.
Did you ask him how much he had to drink?

 

A.
Yes ma=am. I
did.  

 

Q.
And what did he say?

 

A. He
said, AI
believe my lawyer would -- [A] 

 

[Defense
Counsel]: Your honor, could I just have a running objection under the
aforesaid Fifth, Sixth, Fourteenth Amendment right to counsel under 402, 403 as
earlier stated?

 

The
Court: Yes. [Emphasis supplied.]

 

Later on, Officer Nelson=s testimony turned to the field sobriety tests.  After he recounted Lajoie=s performance on the horizontal gaze nystagmus test, the following
took place:

Q.
After the horizontal gaze nystagmus evaluation what did you do next?

 

A. I
was going to attempt to conduct the other two field sobriety tests, which is
the walk and turn and one leg stand.

 

Q.
Did you ask the Defendant if he would cooperate with those evaluations?

 

A.
Yes.

 

Q.
And did he?

 

A.
No. He did not. He -- no, he did not.

 

Q.
Did he give you any reason why he didn=t want to?

 

A. He
stated his lawyer would advise him not to do that.

 








Q. At
this point -- 

 

[Defense
Counsel]: Your Honor, excuse me, with [a] running objection with
reference to any reference to a lawyer -- request for a lawyer.

 

The
Court: That statement=s
overruled.[2]
[Emphasis supplied.]

 

The State is correct that an
error in the admission of evidence is cured when the same evidence comes in
elsewhere without objection.  Valle v.
State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).  However, one of the exceptions to the
requirement for a contemporaneous objection is a running objection.  Ethington v. State, 819 S.W.2d 854,
858 (Tex. Crim. App. 1991).  As shown
above, Lajoie asked for running objections and was therefore not
required to object each and every time the same evidence was offered.  See id. 








Furthermore, Lajoie cannot be
faulted for pursuing testimony on cross-examination about his request for
counsel because the trial judge had already ruled that testimony regarding that
subject was admissible.  A defendant is
permitted to offer evidence identical to that which he objected to earlier to
rebut, destroy, or explain the previously admitted evidence.  Leday v. State, 983 S.W.2d 713, 718B19 (Tex. Crim.
App. 1998); Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App.
1993).  That is exactly what Lajoie did
here.                  3. Affirmative Waiver

The State next contends that
Lajoie affirmatively waived any complaint to the video.  When the video was offered at trial, Lajoie=s counsel responded, A[N]o objection from the Defense, with exception to earlier pre-trial
motions and requests for running objections.@  The State points out that
nothing was preserved from the pretrial motions because the court never gave a
ruling.  However, as we have held above,
Lajoie=s requests for running objections were effectual.  Thus, Lajoie did not affirmatively waive his
complaints about the video.

4. Lack of Specificity
and Adverse Ruling    

The State next contends that
Lajoie did not preserve error because his objections lacked specificity and he
failed to get adverse rulings on his objections.  Part of the State=s argument again deals with Lajoie=s failure to get a ruling on his pretrial motions to suppress.  Again, as stated above, even the failure to
file a pretrial motion does not waive a complaint of improperly obtained
evidence.  Johnson, 743
S.W.2d at 309.  Thus, Lajoie=s failure to obtain an adverse ruling on those motions does not
necessarily mean that the alleged error was not preserved.  








At trial Lajoie objected to
Officer Nelson=s testimony Aunder the aforesaid Fifth, Sixth, Fourteenth Amendment right to
counsel under 402, 403 as earlier stated.@ [Emphasis supplied.]  The State
seems to focus on the emphasized terms claiming that Lajoie must have either
been referring to his pretrial statements on which he failed to get a ruling or
to some previous unrecorded discussion that Aprobably took place after the lunch recess.@  Regardless of what prior
objection Lajoie was referring to, we do not find that to be
determinative.    

If it is apparent from the record that the trial court
understood the objection and its grounds, error is preserved.  Dixon v. State, 928 S.W.2d 564, 564B65 (Tex. Crim.
App. 1996).  Whether the specific grounds
for the objection were apparent from the context of the objection is determined
by looking at each situation individually as it arises.  Heidelberg v. State, 144 S.W.3d 535,
538 (Tex. Crim. App. 2004).  Here it is apparent from the record that
Lajoie was objecting to evidence of his requesting counsel during the DWI
investigation.  Moreover, it is clear on
what grounds he was relying for his objectionsCthe right to counsel under the Fifth, Sixth, Fourteenth Amendments and
evidence rules 402 and 403.    








The State also contends that
the court=s Ayes@ reply to
Lajoie=s request for a running objection does not amount to an adverse
ruling.  But by asking for and receiving
a running objection to testimony Lajoie felt was in error, Lajoie received an
adverse ruling.  Lajoie wanted the
evidence regarding his desire to speak to an attorney not be presented to the
jury.  The trial court disagreed and thus
Lajoie sought and received a running objection; by doing so, he preserved this
alleged error.  Even if we held that the
trial court=s Ayes@ response
was not an express ruling, error would still preserved because a trial court=s ruling may be implied
under Texas Rule of Appellate Procedure 33.1(a)(2).  Montanez v. State, 195 S.W.3d 101, 105
(Tex. Crim. App. 2006).

The State also argues that
because the trial court responded to one of Lajoie=s objections with that Astatement=s overruled@ that Lajoie=s objection was somehow ineffectual. 
Again, if it is apparent from the record that the trial court understood the
objection and its grounds, error is preserved.  Dixon, 928 S.W.2d at 564B65.  Lajoie had made clear to the trial court his
desire not to have evidence of his repeated requests for counsel presented to
the jury.  Under these circumstances, we
again hold that it is apparent from the record that the trial court understood
the objection and its grounds; thus error is preserved.

5. Publishing of the Video








Finally, the State asserts that Lajoie did not preserve
error because the record is silent as to what portions of the video were
published to the jury.  The State attempts
analogize the situation here with a scenario in which a record does not include
the exhibit at all, citing Tutt v. State, 940 S.W.2d 114, 122 (Tex. App.CTyler 1996, pet.
ref=d) (holding that
when video of DWI arrest played before the jury, but not introduced, waiver
occurred), and Garcia v. State, 901 S.W.2d 724, 729 (Tex. App.CHouston [14th
Dist.] 1995, pet. ref=d) (holding that defendant waived error
regarding the admission of evidence because the videotape was not included in
the record).  However, as the State
acknowledges, the video here was introduced and included in the record.  The State has not cited us to any authority,
nor have we found any, that supports the contention that an appellant fails to
preserve error when it is not exactly clear what portions of a video exhibit
were published to the jury.  

Here, we have been able to review the exhibit in
question.  The State points out that
during the presentation of the video, the video was stopped and then skipped
ahead to the next Arelevant portion.@  It is unclear what portion of the video was
skipped and not shown to the jury.  The
State argues that this somehow makes Lajoie=s alleged error
not preserved.  However, the record as a
whole clearly indicates what Lajoie=s complaints were
with the videoChe did not want to jury to hear him
repeatedly mention an attorneyCand that at least
some of that evidence was presented to the jury.  Consequently, when the State introduced the
video, Lajoie was prompted to again reference his running objections which are
discussed above.  








Under these facts, we hold that Lajoie did preserve his
first point.       

IV. Lajoie=s Repeated
Requests for Counsel 

Again, Lajoie argues that the trial court=s refusal to
suppress the portions of the video in which he requests and mentions an attorney
was error.  We agree.  

A. Abuse of Discretion 

The standard of review for a trial court=s admission of
evidence is abuse of discretion, and wide discretion is afforded to the trial
judge.  Theus v. State, 845 S.W.2d
874, 881 (Tex. Crim. App. 1992).  The
trial court=s decision should be reversed on appeal
only if there is a showing of a clear abuse of discretion.  Id. at 881.   Only if the court=s decision falls
outside the Azone of reasonable disagreement,@ has it abused its
discretion.  Rankin v. State, 974
S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh=g); Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).

B. Application








The State contends that no error occurred under Griffith
v. State.  55 S.W.3d 598 (Tex. Crim.
App. 2001).  In Griffith, the
appellant was asked to take a breath alcohol test and replied that he wanted to
consult his lawyer before deciding whether to take the test.  Id. at 600.  This exchange was captured on video and presented
to the jury.  Id. at 600B01 (stating that
appellant=s request for an attorney was cloaked
around his refusal to take the [breath]‑alcohol test, which has
statutorily‑mandated probative value, as did his speech pattern if it was
impaired).  Here Lajoie mentioned or
asked for counsel not only when Officer Nelson asked him to take the breath
test, but in other instances as well. 
Moreover, there was adequate dialog by Lajoie throughout the video that
did not involve him asking for an attorney from which the jury could have
observed his speech pattern.   

The main thrust of the State=s argument here is
that because Lajoie was not under custodial interrogation, nor had judicial
proceedings been initiated, he was not yet entitled to an attorney under the
Fifth or Sixth Amendments. However,  Lajoie=s contention is
that the trial court erred by allowing the jury to hear the portion of the
videotape in which he invoked the right to counsel because, even if he had no
right to an attorney when he invoked it, he was prejudiced when the jury heard
him ask for an attorney.  We agree. 








Lajoie=s objections were based not only on the Fifth, Sixth, and Fourteenth
Amendments, but also on Texas Rules of Evidence 402 and 403.  Rule 402 states that relevant evidence is
admissible.  Tex. R. Evid. 402. 
Rule 403 states that A[a]lthough relevant, evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice.@  Tex. R. Evid. 403. 
When conducting an analysis under rule 403 a trial court must balance
(1) the inherent probative force of the proffered item of evidence along with
(2) the proponent=s need for that evidence against (3) any
tendency of the evidence to suggest decision on an improper basis, (4) any
tendency of the evidence to confuse or distract the jury from the main issues,
(5) any tendency of the evidence to be given undue weight by a jury that has
not been equipped to evaluate the probative force of the evidence, and (6) the
likelihood that presentation of the evidence will consume an inordinate amount
of time or repeat evidence already admitted. 
Gigliobianco v. State, 210 S.W.3d 637, 641B42 (Tex. Crim.
App. 2006).   








Here the evidence of Lajoie asking for an attorney does
have some probative value as evidence of his speech pattern on the night of his
arrest.  However, we cannot say that the
State had a distinct need for this evidence in light of other portions of the
video which offer just as much probative evidence of Lajoie=s speech pattern
that night.  Furthermore, we believe that
presenting the jury with this evidence certainly could lead to a decision on an
improper basis, i.e. anyone who immediately and repeatedly asks for an attorney
must be guilty.  As such, this evidence
had a tendency to be given undue weight by the jury in deciding Lajoie=s guilt.  Therefore, we hold that the evidence of Lajoie mentioning an attorney was inadmissible
because its probative value was substantially outweighed by the danger of
unfair prejudice.  See Tex. R. Evid. 403.           

C. Harm Analysis 

Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
If the error is constitutional, we apply rule 44.2(a) and reverse unless
we determine beyond a reasonable doubt that the error did not contribute to
appellant=s conviction
or punishment.  Tex. R. App. P. 44.2(a). 
Otherwise, we apply rule 44.2(b) and disregard the error if it did not
affect appellant=s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642B43 (Tex.
App.CFort Worth 1998, pet. ref=d).








Lajoie argues that this error is constitutional; however,
we disagree.  At first glance it seems
obvious that Lajoie=s attempts to invoke his right to counsel
would be of constitutional dimension. 
However, as discussed above, at the time Lajoie referenced his right to
counsel, he was not under custodial interrogation nor had judicial proceedings
been initiated against him.  Accordingly,
neither his Fifth nor his Sixth Amendment right to counsel had not yet
attached.  See Miranda v. Arizona,
384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966) (stating that custodial
interrogation is a prerequisite to the implication of the Fifth Amendment right
to counsel); Griffith, 55 S.W.3d at 603 (stating that Sixth Amendment
right to counsel arises only after adversary judicial proceedings have been
initiated).  Lajoie even concedes in his
brief that he was merely being detained for a traffic offense.  Based on this and on Lajoie=s Rule 403
objection that this evidence was substantially more prejudicial than probative,
it is clear that the error was nonconstitutional. 

Because we determine that the
error is not constitutional, rule 44.2(b) is applicable.  Tex.
R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial and injurious effect or
influence in determining the jury=s verdict.  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall,
961 S.W.2d at 643.  In making this
determination, we review the record as a whole.  See Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).








The State argues that the overwhelming evidence of Lajoie=s guilt renders
the error harmless.  Although
overwhelming evidence of guilt is a factor to consider in a harm analysis, it
is not the only factor; other factors include the nature of the evidence
supporting the verdict, the character of the alleged error, and how the
evidence might be considered in connection with other evidence in the case.  Motilla v. State, 78 S.W.3d 352, 356
(Tex. Crim. App. 2002).  

Here the evidence of guilt was hardly overwhelming.  The evidence supporting guilt was Lajoie=s refusal to
perform the breath test, his slow speech, and his poor performance on the horizontal gaze nystagmus test. 
The only evidence that went squarely to whether Lajoie had lost the
normal use of his mental faculties by the consumption of alcohol was Officer
Nelson=s opinion. 

Additionally, the jury was allowed to hear Lajoie state
multiple times that he would like to consult a lawyer and make similar
references.  Moreover, during closing
argument the State argued as follows:

[T]he Defendant=s response [to Officer Nelson] is
first, AAm I under arrest?@ 
Why are we jumping from a traffic stop to arrest?  He knew he had done something wrong.  He knew that he should [not] have been out on
that road and that=s why he initially asked the
officer, well, am I under arrest.  The
officer told you normally in traffic stops, people, they don=t jump right to arrest.  They don=t jump right to, I want my lawyer
when [the] officer told him he was only stopping him for a traffic violation. 
The Defendant knew he was guilty and he began to panic and he began to
give us these other signs of intoxication.

 

. . . .

 








It=s American to take responsibility
for your actions.  It=s American to own up when you do
something wrong, and the Defendant is not owning up.  That=s un-American.  You
send him a message that you will not get off because you refuse to cooperate
with criminal investigations.  Don=t let him [go] free because he
refused to cooperate.  Send a message and find him
guilty. [Emphasis supplied.]

 

After reviewing the whole record, we believe that it is
clear that not only was evidence of Lajoie asking for an attorney before the
jury, but that the State overtly emphasized and relied on that evidence as
proof of his guilt.  Therefore, we hold
that the error had a substantial and injurious effect
or influence in determining the jury=s verdict and, thus, affected Lajoie=s substantial right.  See
King, 953 S.W.2d at 271. 
Accordingly, we sustain Lajoie=s first point.[3]        

V. Conclusion

Having sustained Lajoie=s first point, we reverse the trial court=s judgment and remand for proceedings consistent with this
opinion.  

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
May 31, 2007











[1]See Tex. R. App. P. 47.4.





[2]We
read this statement to be a reaffirmation by the trial court that Lajoie=s
attorney statements were admissible in accordance with the trial court=s
granting of Lajoie=s
first running objection.  





[3]Because
of our disposition of Lajoie=s first point, we need not
reach his second point in which he argues that the trial court erred by
allowing the jury to see the portion of the video in which he invoked his right
to remain silent and terminated the interview with Officer Nelson.